OPINION
{¶ 1} Defendant-appellant, Brandon T. Tullis, appeals from a judgment entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding appellant guilty of one count of felonious assault and one count of attempted murder, each with two gun specifications. The two charges arose out of a single transaction, the shooting of Mike Brown, Jr., outside of Misty's Lounge in early September 2000, and the trial court accordingly merged the offenses and imposed sentence only on the attempted murder verdict.
 {¶ 2} Appellant has timely appealed and brings the following assignments of error:
First Assignment of Error
The trial court committed prejudicial error, in violation of the due process clause of the united states constitution, when it failed to instruct on the inferior degree offense of aggravated assault.
Second Assignment of Error
Because of the delay between the offense and the indictment, and because the defense was prejudiced by that delay, the trial court denied appellant due process of law under the state and federal constitutions when it denied the motion to dismiss the indictment.
Third Assignment of Error
The trial court erred in overruling appellant's motion to dismiss because the trial court did not try appellant within the 90 day statute of limitations.
 {¶ 3} Appellant's first assignment of error asserts that the trial court erred in failing to instruct the jury on the "inferior degree" offense of aggravated assault as an alternative to felonious assault. Aggravated assault is an inferior degree of felonious assault "because its elements [are] identical to felonious assault except for the additional mitigating element of provocation." State v. Mack (1998),82 Ohio St.3d 198, 200. A defendant charged with felonious assault is therefore entitled to an instruction on aggravated assault where the evidence presented at trial reasonably would support both an acquittal on the charged crime of felonious assault and a conviction for aggravated assault. State v. Glass, Franklin App. No. 04AP-140, 2004-Ohio-5843.
Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.
State v. Deem (1988), 40 Ohio St.3d 205, paragraph five of the syllabus. To ascertain whether the requisite provocation exists:
* * * [A]n objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage." * * *
Mack, at 201, quoting State v. Shane (1992), 63 Ohio St.3d 630, 634-635. "[P]ast incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." Mack, at 201.
 {¶ 4} Appellant and the victim in this case had a history of hostility, including at least one prior physical altercation. On the night of the shooting, the events began inside the Misty Lounge with an attack by Mike Brown upon appellant, which was by all accounts unprovoked and consisted of a "sucker punch" that caused appellant to fall into one of his companions, Marshawn Johnson, and then to the floor. Both protagonists and a large group of friends were immediately expelled from the bar, but the dispute continued outside in the parking lot.
 {¶ 5} Mike Brown testified at trial as to the events that ensued. Once the parties were outside, Marshawn Johnson and his brother Myron Johnson confronted Brown. Brown backed away from the men, who were upset by the incident in the bar, and then saw appellant standing next to an open car door and holding a gun. Brown heard people yell "shoot him," and turned to run. As he ran away, he was struck by bullets and fell to the ground. Brown did not see anyone else with a gun or anyone standing around appellant. He received four gunshot wounds, including one that left him paralyzed from the waist down. Although Brown initially identified appellant to the police as the shooter, he did not actually see the shooting because he was turning to run away. Brown's conclusion that appellant was the shooter was based upon the fact that he had earlier punched appellant in the bar, the timing of seeing appellant holding a gun and being shot immediately thereafter, and the fact that Brown saw no one else with a gun.
 {¶ 6} Another witness to the shooting testified at trial. China Parker, Brown's cousin, testified that she saw Brown backing out of the bar confronted with a group of men, and urged Brown to leave the area. As Brown had testified, Parker also stated that persons in the crowd were yelling at appellant to shoot Brown, and that most other onlookers were on the sidewalk, rather than in the parking lot next to the car where appellant stood, somewhat apart from the others. Parker saw Brown turn to run, heard shots, and saw appellant standing at his car shooting. When first interviewed by defense investigators, Parker denied seeing the shooting, but later testified that she did so because of threats by appellant's friends and hoped to avoid testifying. She later picked appellant out of a photo array.
 {¶ 7} The testimony of Marshawn ("Shuffle") Johnson, presented by deposition because Johnson was incarcerated out-of-state at the time of trial, largely corroborated the other witnesses, although Johnson stated that he did not actually see appellant shoot Brown because Johnson was facing another direction. Johnson testified that, after the unprovoked assault upon appellant in the bar, appellant was standing immediately behind Johnson and Johnson's brother during the confrontation outside the bar:
Q. Where was Brandon then?
A. Brandon, he just — Brandon, he was — Brandon was right there because it was like I came out, I'm mad, I'm ready to fight. I ain't going to lie. I came out ready to fight with Mike, and Mike was — and B was right there behind me all the time ready to fight him too, but I guess they was going to jump him.
* * *
Q. Okay. So you're saying, but at this time Brandon was behind you?
A. He was behind me.
Q. Do you know if he was still — are you sure he was still behind you?
A. For a fact he was still behind me because he kept trying to act like he was trying to get at him too.
Q. And then after that you lost track of him?
A. Yeah. Like three — after — Mike was like: I'm sorry, Shuffle, I ain't got no problem with you, this and that. China was pulling on Mike herself, like: Mike, come on, please, please come on. You know, I'm saying she's trying to get him to come with her. Then like three seconds later I was just like — Mike was like: Shuffle, man, my fault man. I don't want no beef with you, this and that.
Myron was pulling on me. I'm like: It's cool. I walked off. Two seconds later after I walked off that's when the shooting started going on.
(Depo. at 219-220.)
 {¶ 8} We agree with appellant that there was sufficient evidence before the trial court to warrant instructing the jury on the inferior-degree offense of aggravated assault in this case. All of the testimony in the case confirmed that the victim had "sucker punched" appellant in the bar without any immediate provocation. The testimony also consistently establishes that a very short period of time elapsed between the assault in the bar, ejection of the parties, and the shooting. Johnson's testimony describes appellant as agitated, angry, and ready to continue the fight. The jury could have concluded from this evidence that appellant subjectively was in a state of sudden passion or rage brought on by serious provocation occasioned by the victim. The trial court accordingly erred in refusing to instruct the jury on the inferior-degree offense of aggravated assault.
 {¶ 9} In the context of this appeal, however, we find that even if we are to find error on the part of the trial court in this respect, this does not support the finding of prejudicial error sufficient to warrant reversal of the trial court's judgment. The felonious assault and attempted murder charges against appellant arose out of the same conduct by appellant and were properly merged by the trial court for sentencing. Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." "Allied offenses of similar import do not merge until sentencing, since a conviction consists of verdict and sentence." State v. McGuire (1997),80 Ohio St.3d 390, 399, citing State v. Osborne (1976), 49 Ohio St.2d 135,144, and State v. Waddy (1992), 63 Ohio St.3d 424, 447. This distinction between the number of guilty verdicts rendered by a jury on a number of allied offenses of similar import and the ultimate number of convictions
in a criminal case was recently re-emphasized by Justice Cooke in a separate concurrence in which the Supreme Court of Ohio, without a lead decision, dismissed as improvidently certified an appeal containing a related issue:
* * * For purposes of R.C. 2941.25, this court has already determined that a "conviction" consists of both "verdict and sentence." * * * Thus, for Counts 1, 2, 3, and 5, the trial court only "convicted" [defendant] of two offenses for purposes of R.C. 2941.25, not four. When added to his convictions on Counts 4 and 6, which were not allied offenses of similar import, that left [defendant] properly "convicted" of a total of four
offenses for purposes of R.C. 2941.25, not six. Accordingly, the court of appeals was incorrect when it decided that the trial court erred by convicting [defendant] "of six felonies when he convicted only four criminal acts." * * *
(Emphasis sic.) State v. Fenwick (2001), 91 Ohio St.3d 1252, 1253. (Cooke, J., concurring separately in Supreme Court's dismissal of appeal as improperly certified, otherwise without lead opinion.)
 {¶ 10} As this case is now postured, therefore, we find no prejudicial error in the failure to instruct the jury upon the requested aggravated assault charge, as the jury's ultimate conclusion that appellant was guilty of attempted murder has essentially rendered the felonious assault verdict without consequence. When the trial court properly merged the two counts and sentenced appellant only on the attempted murder verdict, this left appellant convicted, pursuant to McGuire, only of a single crime, attempted murder. While aggravated assault is an inferior-degree offense to felonious assault, and warrants an instruction as would a lesser-included offense, it is not argued in this case to be a lesser-included offense or an inferior-degree offense to the attempted murder charge. Appellant has, therefore, failed to demonstrate prejudicial error in the refusal to instruct on the aggravated assault charge, and appellant's first assignment of error is accordingly overruled.
 {¶ 11} Appellant's second and third assignments of error raise speedy trial issues and will be discussed together. Appellant raises two lines of argument in support of his contention that he was not timely brought to trial: A general assertion of violation of constitutional due process rights based of the delay between occurrence of the crime with which he was charged and his eventual trial, and specific time frames based upon Ohio's speedy trial statute, R.C. 2945.71.
 {¶ 12} Mike Brown was shot on the night of September 1, 2000. Immediately thereafter, appellant left central Ohio and ultimately took up residency in rural Missouri, either to avoid apprehension (according to the prosecution) or, (according to appellant) to seek a lower cost of living. Appellant was not arrested until August 16, 2002, when he was detained in Missouri for an unspecified traffic offense.
 {¶ 13} Although the record contains no explicit record of the matter, one passage in the transcript can be taken to conclusively demonstrate that appellant refused to waive extradition. Appellant was indicted on September 9, 2002, and appeared in Ohio for arraignment on October 16, 2002. After some protracted motion practice, trial commenced on January 26, 2004. There was, accordingly, an interval of some three and one-half years between commission of crime and commencement of trial, 17 months between appellant's arrest and trial, and 15 months between appellant's return to Ohio for arraignment and trial.
 {¶ 14} "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth andFourteenth Amendments to the United States Constitution." State v. Luck
(1984), 15 Ohio St.3d 150, paragraph two of the syllabus. When a defendant moves to dismiss an indictment by presenting evidence establishing substantial prejudice resulting from pre-indictment delay, the burden shifts to the state to produce evidence of a justifiable reason for the delay. State v. Whiting (1998), 84 Ohio St.3d 215, 217, citing Luck and United States v. Lovasco (1977), 431 U.S. 783,97 S.Ct. 2044. Proof of actual prejudice to the defendant must be specific and non-speculative; the defendant bears the burden of demonstrating the exculpatory value of the evidence of which he was deprived due to the delay. State v. Peoples, Franklin App. No. 02AP-945, 2003-Ohio-4680.
 {¶ 15} Appellant argues in the present case that he was prejudiced because the delay made it difficult for him to locate and present relevant witnesses and Misty's Lounge was no longer located in the same strip mall, which prevented a jury view of the premises. "[T]he absence of witnesses is insufficient to constitute a showing of actual prejudice, rather, the defendant must be able to show in what specific manner missing witnesses would have aided his defense to establish actual prejudice." State v. Bass, Franklin App. No. 02AP-547, 2003-Ohio-1642, at ¶ 71. Appellant has not articulated in the present case which witnesses he would have produced if more timely apprehended, and what exculpatory testimony they would have presented. Likewise, appellant does not articulate why the departure of Misty's Lounge from the location of the crime prejudiced his ability to present, either through a jury view of the parking lot or visual aids, a diagrammatic description of physical events on the night of the shooting. Appellant has thus offered only speculative, non-specific reasons in support of his assertions of prejudice arising from the delay in bringing him to trial.
 {¶ 16} Even assuming, arguendo, that appellant had suffered prejudice from the delay, there was ample testimony before the trial court to substantiate that the delay was not caused by any lack of diligence by the state in attempting to locate and apprehend appellant. Testimony established that the Columbus Division of Police promptly issued a warrant for appellant's arrest, repeatedly attempted to interview his parents and family in Ohio, contacted authorities in western New York state where appellant also had family, mailed a copy of the warrant to appellant's relatives in New York, and succeeded in having the case aired on a national television show, "America's Most Wanted."
 {¶ 17} We accordingly find that the trial court did not err in finding an absence of due process violation based on a delay in bringing appellant to trial under Lovasco and Luck: Neither the actual prejudice nor unjustifiable delay prongs of the tests under these cases were met in the present case, and we find no violation of appellant's due process rights on this basis.
 {¶ 18} With respect to the alleged statutory speedy trial violation in the present case, R.C. 2945.73 provides in pertinent part as follows:
2945.73 Discharge for delay in trial
(A) A charge of felony shall be dismissed if the accused is not accorded a preliminary hearing within the time required by sections 2945.71
and 2945.72 of the Revised Code.
(B) Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and2945.72 of the Revised Code.
 {¶ 19} R.C. 2945.71 provides the specific time frames for speedy trial deadlines:
2945.71 Time within which hearing or trial must be held
* * *
(C) A person against whom a charge of felony is pending:
* * *
(2) Shall be brought to trial within two hundred seventy days after the person's arrest.
* * *
(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section.
 {¶ 20} The time limits of R.C. 2945.71(D) are subject to extension as set forth in R.C. 2945.72:
2945.72 Extension of time for hearing or trial
The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability.
(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;
(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;
(D) Any period of delay occasioned by the neglect or improper act of the accused;
(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
(F) Any period of delay necessitated by a removal or change of venue pursuant to law;
(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;
(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;
(I) Any period during which an appeal filed pursuant to section2945.67 of the Revised Code is pending.
 {¶ 21} Speedy trial statutes will be strictly construed against the state. Brecksville v. Cook (1996), 75 Ohio St.3d 53, 57. We must therefore examine the record to ascertain how much time had run against the state under R.C. 2945.71, 2945.72 and 2945.73 to determine whether appellant's speedy trial rights were violated. The time in which appellant was incarcerated awaiting trial can be divided in two distinct periods for purposes of this examination: the period in which appellant was held in Missouri prior to being returned to Ohio for arraignment, and the period thereafter, which is marked by a number of continuances granted by the trial court. As appellant was incarcerated at all relevant times, the state had 90 days to bring appellant to trial, plus any allowable extensions under R.C. 2945.72.
 {¶ 22} The time begins to run for purposes of the speedy trial statute upon the date of apprehension, not upon the date of offense or date of indictment, and the statute is tolled during periods in which the defendant is incarcerated in another state pending extradition to Ohio, provided that the prosecution has exercised reasonable diligence to secure his availability. R.C. 2945.72(A); State v. Hirsch (1998),129 Ohio App.3d 294. As stated above, although documentary evidence is lacking in this case, the transcript clearly reflects that appellant did not waive extradition and was held in Missouri until the prosecution could secure his presence in Ohio for arraignment. There is no evidence that the prosecution failed to exercise diligence in seeking custody of appellant, nor does the actual length of time between arrest in Missouri and arraignment in Ohio seem to reflect any such lack of diligence. We therefore find that the period between appellant's arrest in Missouri and arraignment should not be counted against the state for speedy trial purposes.
 {¶ 23} As to the lengthy period between arraignment and trial, there is a considerable sequence of extensions and continuances granted by the trial court. On the original trial date of December 30, 2002, the case was continued until January 24, 2003, on request of the parties, and appellant executed a speedy trial waiver in connection with this continuance. On January 24, 2003, appellant entered a plea of not guilty by reason of insanity, which provoked a further inquiry into appellant's mental state that would fall under R.C. 2945.72(B), as a continuance for the purpose of determining appellant's mental competence to stand trial. Successive continuances on March 26, July 14, October 14, and November 10, 2003, included speedy trial waivers executed by appellant. Two shorter continuances at the request of the court, from October 14, 2003 to November 10, 2003, and January 22, 2004 to January 26, 2004, were entered due to ongoing trials taking up the court's calendar. Both of these continuances on the court's motion fall under R.C. 2945.72(H), "any reasonable continuance granted other than upon the accused's own motion." This has been held to include reasonable docket-related continuances at the court's request. State v. Rackham (June 23, 1987), Franklin App. No. 86AP-1035.
 {¶ 24} Based upon the circumstances of the case, we therefore find that appellant's due process rights, either generally under the Ohio and United States Constitutions or under Ohio's specific speedy trial statute, were not violated, and appellant's second and third assignments of error are accordingly overruled.
 {¶ 25} In summary, appellant's first, second and third assignments of error are overruled, and the judgment of conviction and sentence entered by the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and French, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.