DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a guilty plea, in which the trial court found appellant, Catherine A. Varner, guilty of one count of conspiracy to commit murder and one count of complicity in the commission of attempt to commit murder, and sentenced her to serve a total of ten years in prison. On appeal, appellant sets forth the following two assignments of error: *Page 2 
 {¶ 2} "First Assignment of Error
 {¶ 3} "1. The trial court erred in finding the appellant guilty of both conspiracy to commit murder and complicity in the commission of attempt to commit murder, contrary to Ohio Revised Code § 2923.01(F) (G).
 {¶ 4} "Second Assignment of Error
 {¶ 5} "2. The trial court erred in finding the appellant guilty of both conspiracy to commit murder and complicity in the commission of attempt to commit murder, contrary to the double jeopardy clause of the United States Constitution and the Ohio Constitution."
 {¶ 6} The undisputed, relevant facts are as follows. On March 10, 2006, a complaint was filed in the Lucas County Court of Common Pleas, Juvenile Division, which charged Varner and a co-defendant, Devan Fields,[1] with conspiracy to commit murder, in violation of R.C.2923.01 and 2903.02, a first degree felony when committed by an adult. At the time the complaint was filed, Varner was 17 years old. On March 31, 2006, following a hearing, Varner was certified to stand trial as an adult. That same day, the Lucas County Grand Jury indicted Varner and Fields on two counts each of conspiracy to commit murder (counts 1 and 2), in violation of R.C. 2923.01(A)(1) and *Page 3 
(B), and one count each of attempted murder, in violation of R.C.2923.02 and R.C. 2923.03. Separate defense counsel was appointed to represent Fields and Varner, who each pled not guilty to the charges in the indictment.
 {¶ 7} On April 13, 2006, Varner filed a motion to dismiss the charges and a motion to suppress statements she made to police, both of which the state opposed. On May 23, 2006, a plea hearing was held, at which Varner and Fields were both present. At that time, Varner and Fields, through counsel, withdrew their respective not-guilty pleas and each entered pleas of guilty to Counts 1 and 3 of the indictment. Varner withdrew her motion to dismiss and motion to suppress.
 {¶ 8} Before accepting Varner's and Fields' guilty pleas, the trial court inquired of both defendants as to whether they were under the influence of alcohol or drugs, explained the nature of the pleas and determined they were not induced, forced, or threatened into entering a plea. In addition, the trial court explained that, by entering guilty pleas, Varner and Fields were waiving the right to a jury trial, to confront witnesses, to require the state to prove their guilt beyond a reasonable doubt, and not to be compelled to testify against themselves. The trial court further set out the consequences of the pleas, including the possible maximum sentences and imposition of post-release control, explained the limitations on Varner's and Fields' rights to appeal any sentence imposed following the acceptance of a guilty plea, and ascertained that both defendants were satisfied with the performance of their court-appointed counsel. *Page 4 
 {¶ 9} The trial court then asked Varner and Fields each to recount the events which led to the charges against them. As to Count 1, Fields stated that, in February 2006, he and Varner agreed to kill Varner's mother, Aleatha Perrin, and her brother, Anthony Perrin, so that Varner could receive insurance proceeds and inherit the house in which her family lived. Fields stated that, to effectuate the plan, appellant let him into the house on March 8, 2006, where he hid in an upstairs bedroom. Fields further stated that, at 2:00 a.m. on March 9, 2006, he went into Anthony Perrin's bedroom armed with a hunting knife, stabbed Anthony twice on the right side of his neck, and cut the front of Anthony's neck. Thereafter, Fields hit Anthony several times on the head with a hammer and attempted to strangle him with a shoelace.
 {¶ 10} At the conclusion of Fields' statement, Varner engaged in the following exchange with the trial court as to the charges in count one of the indictment:
 {¶ 11} "The Court: * * * Tell me, and I read the indictment once now as amended, tell me what you did, Ms. Varner, during the time frame from February 9th to March the 9th of the this year in reference to conspiracy to commit murder.
 {¶ 12} "Ms. Varner: Well, like he [Fields] said on the March the 8th we talked about it.
 {¶ 13} "The Court: Talked about what?
 {¶ 14} "Ms. Varner: Talked about planning on killing my mom and brother.
 {¶ 15} "The Court: And for what purpose:
 {¶ 16} "Ms. Varner: To inherit the house and insurance. *Page 5 
 {¶ 17} "The Court: All right.
 {¶ 18} "Ms. Varner: And then around 12:00 it happened like, yeah, he — well, we brung it up again.
 {¶ 19} "The Court: You talked — who is we?
 {¶ 20} "Ms. Varner: Me and Devan [Fields].
 {¶ 21} "The Court: All right.
 {¶ 22} "Ms. Varner: Like around 2:00 it happened.
 {¶ 23} "The Court: * * * You and the co-defendant [Fields] then talked again about killing your mother and your brother? Is it your mother and brother we're talking about?
 {¶ 24} "Ms. Varner: Yeah.
 {¶ 25} "The Court: And what was the plan?
 {¶ 26} "Ms. Varner: The plan was to kill them to get the insurance money and the house and that was the plan.
 {¶ 27} "The Court: And then did you hide Mr. Fields in the house?
 {¶ 28} "Ms. Varner: Yeah, I brought him in to my house and hid him.
 {¶ 29} "The Court: So you knew on March the 9th then that this was going to take place?
 {¶ 30} "Ms. Varner: Yeah.
 {¶ 31} "* * * *Page 6 
 {¶ 32} "The Court: I don't want to put — there is nothing humorous about this. We had one other episode where there was a lot of laughter in the courtroom from the defendants. You went in and you hid him, it was so your mother and your brother wouldn't see him?
 {¶ 33} "Ms. Varner: Yes.
 {¶ 34} "* * *
 {¶ 35} "The Court: So then what happens then in reference to your brother?
 {¶ 36} "Ms. Varner: Well, what I heard was that [Fields] went downstairs, he stabbed [Anthony] and choked him and hit him on the head with a hammer.
 {¶ 37} "The Court: And then your mother was to be the next victim, correct?
 {¶ 38} "Ms. Varner: Yes."
 {¶ 39} As to the charges in Count 3 of the indictment, Fields stated that he and Varner planned for, but did not go through with, the killing of Varner's mother, Aleatha Perrin, so that Varner could "get inheritance and the house." Fields said the agreement was for him to kill Aleatha Perrin "in the morning;" however, Anthony Perrin survived the attack, crawled from the basement, and warned his mother in time to prevent the murder from occurring.
 {¶ 40} After Fields finished testifying, the following exchange took place between the trial court and Varner:
 {¶ 41} "The Court: All right. Ms. [Varner], tell me what in reference to the third count what your involvement was? *Page 7 
 {¶ 42} "Ms. Varner: I let him into the house for him to commit the conspiracy.
 {¶ 43} "The Court: So again, on March the 8th or 9th you let Mr. Fields in, you hid him in the house; is that right?
 {¶ 44} "Ms. Varner: Yes.
 {¶ 45} "The Court: You know that the purpose in doing this was to, in fact, kill your brother, kill your mother, and in fact, for the purpose of inheriting the house and any insurance proceeds; is that correct?
 {¶ 46} "Ms. Varner: Yes."
 {¶ 47} After Varner's testimony, the prosecutor supplemented the record by stating that the evidence presented at trial would have shown that Varner and Fields talked about cutting up the bodies of Varner's mother and brother, and disposing of them either by burning them or dissolving them in the bathtub with acid. The prosecutor also stated that, while Fields was attacking Anthony Perrin, Varner sent Fields a text message asking what he was doing. When Fields replied that he was killing her brother, Varner told Fields to come back to the bedroom when he was finished. When given the opportunity to respond, neither Fields nor Varner disputed the prosecutor's statements.
 {¶ 48} At the conclusion of all the testimony, the trial court found that both defendants had been advised of their constitutional rights and limited right to appeal. As to Varner, the trial court further found that she understood the nature of the charges against her, the effect of her plea, and the maximum possible penalties involved, and determined that she made a "knowing, intelligent, and voluntary waiver of [her] rights." *Page 8 
The trial court then accepted Varner's plea and found her guilty of the crimes charged in Counts 1 and 3 of the indictment.
 {¶ 49} On June 7, 2006, a sentencing hearing was held at which the trial court reviewed the terms and consequences of Varner's guilty plea, advised her that, upon release from prison, she would be subjected to post-release control, and reaffirmed her intent to enter the plea. Varner's appointed counsel then reminded the trial court that, although tried as an adult, Varner was still a 17 year-old child, who "never intended for this incident to go as far as it did." Counsel further stated that Varner was "thankful" that her mother and brother were still alive, and was "remorseful for her conduct" and "sickened" by the prospect of what could have happened. Varner offered an apology to "everybody affected" by her actions. The prosecutor then reminded the trial court of the facts as stated at the plea hearing, and asked the trial court to dismiss Count 2 of the indictment.
 {¶ 50} After hearing the above statements, the trial court stated that, although she was only17 years old, Varner was already the parent of a two year-old child, and therefore should be aware of the responsibilities demanded of a parent. The trial court further stated that, by her actions, Varner demonstrated an indifference for human life. Specifically, the trial court noted that Varner and Fields planned their activities in great detail, including secreting Fields in Varner's home, choosing the time and manner of the attacks, and exchanging text messages while the attack on Anthony Perrin was taking *Page 9 
place. The trial court also noted that Varner had one prior misdemeanor adjudication for unauthorized use of property in 2000.
 {¶ 51} After making the above observations the trial court stated that, under the circumstances, sentencing Varner to community control instead of prison would be clearly inappropriate, as would imposing the minimum prison term. Accordingly, the trial court sentenced Varner to serve seven years in prison for complicity in the commission of attempt to commit murder, and three years in prison for conspiracy in the commission to commit murder. The two sentences were ordered to be served consecutively. Count 2 of the indictment was dismissed. A timely notice of appeal was filed by Varner on July 6, 2006.
 {¶ 52} In her first assignment of error, Varner asserts that, although she plotted to kill both Aleatha and Anthony Perrin, she should be punished for only one crime. In support, Varner makes two arguments. First, she argues that separate punishment is barred by R.C. 2923.01(F), because the conspiracy to murder her mother and brother and her eventual complicity in the attempted murder of her brother were part of a "common plan or scheme to achieve a common, single, comprehensive goal." Second, she argues that, pursuant to R.C. 2923.01(G), she should have been convicted of only one offense, since "the conspiracy count involved the plan to kill both victims, and the complicity charge involve the attempt to kill one of the two victims."
 {¶ 53} As to Varner's first argument, R.C. 2923.01(F) states that "[a] person who conspires to commit more than one offense is guilty of only one conspiracy, when the *Page 10 
offenses are the object of the same agreement or continuous conspiratorial relationship." In State v. Childs (2000),88 Ohio St.3d 558, 2000-Ohio-425, the Ohio Supreme Court held that punishment for two separate convictions may be barred by R.C. 2923.01(F) if the two offenses are either (1) "the object of the same agreement," or (2) "part of a continuous conspiratorial relationship." Childs, supra, at 562. However, R.C. 2923.01(F) only bars multiple conspiracy convictions. It does not address situations where, as here, a defendant pleads guilty to, and is convicted of, conspiracy to murder one victim and complicity in the attempted murder of another victim. Varner's first argument is without merit.
 {¶ 54} As to Varner's second argument, pursuant to R.C. 2923.01(G), "[w]hen a person is convicted of committing or attempting to commit a specific offense or of complicity in the commission of or attempt to commit the specific offense, the person shall not be convicted of conspiracy involving the same offense."
 {¶ 55} The crime of conspiracy is set forth in R.C. 2923.01 as follows:
 {¶ 56} "(A) No person, with purpose to commit or to promote or facilitate the commission of * * * murder * * *, shall do either of the following:
 {¶ 57} "(1) With another person or persons, plan or aid in planning the commission of any of the specified offenses;
 {¶ 58} "(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission any of the specified offenses. *Page 11 
 {¶ 59} "(B) No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed. * * *"
 {¶ 60} The crime of complicity is set forth in R.C. 2923.03, which states that:
 {¶ 61} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 62} "(1) Solicit or procure another to commit the offense;
 {¶ 63} "(2) Aid or abet another in committing the offense;
 {¶ 64} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code * * *."
 {¶ 65} Pursuant to R.C. 2923.03(C), in order to be convicted of the crime of complicity, it must be shown that the underlying offense was actually committed. However, at least one Ohio court has observed that "no [underlying] offense need be committed in order for one to be convicted of conspiracy." State v. McNeil (Dec. 20, 1979), 10th Dist. No. 79AP-451. Accordingly, the crimes are not necessarily identical, particularly when they are committed against two different victims. Id.
 {¶ 66} In this case, by pleading guilty to Count 1 of the indictment, Varner admitted to planning the murders of her mother and brother with Fields, and to *Page 12 
performing a substantial act in furtherance of the conspiracy by letting Fields into the house and hiding him until the opportunity to carry out the plan presented itself. However, by pleading guilty to Count 3 of the indictment, Varner admitted to the additional element of aiding Fields in the commission of the underlying offense of attempted murder. It is the establishment of this additional element which separates the crimes of conspiracy and complicity into two separate offenses. Accordingly, punishment for each offense does not violate R.C. 2923.01(G).
 {¶ 67} Upon consideration of the foregoing, we find that the crimes of conspiracy to commit murder against two victims, and complicity in the attempt to commit murder against one of those same victims, is not prohibited by R.C. 2923.01(F) and (G). Varner's first assignment of error is not well-taken.
 {¶ 68} In her second assignment of error, Varner asserts that her convictions for both conspiracy and complicity violate the Double Jeopardy Clause of both the Ohio Constitution and the United States Constitution. In support, Varner argues that R.C. 2941.25(A), "protects [her] against multiple punishments for the same criminal conduct."
 {¶ 69} R.C. 2941.25 states:
 {¶ 70} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 71} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or *Page 13 
similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."[2]
 {¶ 72} The Ohio Supreme Court has stated that R.C. 2941.25(A) tests the elements of each crime charged, to see whether they ?`correspond to such a degree that the commission of one crime will result in the commission of the other.' If so, the crimes are deemed offenses of similar import and may not be separately punished." State v.Childs, supra, at 561, quoting State v. Ranee (1999), 85 Ohio St.3d 632,638 (other citation omitted). The relevant inquiry is whether the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other. * * *"Ranee, supra, at 638-639. In applying R.C. 2941.25 to a specific case, "the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract." Ranee, supra, at paragraph one of the syllabus.
 {¶ 73} It is well-settled that a defendant who is convicted of complicity in the commission of an offense is also guilty of conspiring to commit the same offense. R.C. 2923.03(A). Accordingly, the crimes of complicity and conspiracy are allied offense of similar import when the two charges involve animus against the same victim. State v. Hoop (Aug. 2, 1999), 12th Dist. No. CA98-04-017; State v. Keenan (1998),81 Ohio St.3d 133, 151. However, in cases where the facts demonstrate the elements necessary *Page 14 
for a conspiracy conviction against one victim and a complicity conviction against a separate victim, the crimes are of dissimilar import, even if they arise during the same course of conduct. SeeState v. Johnson, 7th Dist. No. 04 MA 193, 2007-Ohio-3332, ¶ 33. ("Courts have regularly held that separate animus can be inferred when a defendant is charged with the same offense against different victims during the same course of conduct. Id.); State v. Gibson, 6th Dist. No. S-02-016, 2003-Ohio-1996, ¶ 19 (Crimes are of dissimilar import if the defendant's course of conduct puts more than one person at risk.);State v. Gray, 10t Dist. No. 04AP-938, 2005-Ohio-4563, ¶ 18 (Crimes defined in terms of conduct toward "another" carry "a separate or `dissimilar' import with respect to each victim of that harm or risk of harm.")
 {¶ 74} As set forth above, the record in this case shows that Varner and Fields hatched a plan to murder both Aleatha and Anthony Perrin, so that Varner could receive insurance proceeds and inherit the house. Varner testified at the plea hearing that she told Fields she wanted both her mother and brother dead, and that it "was time" for her mother "to go," and she hid Fields in the house until March 9, 2006, when Fields beat, slashed, and strangled Anthony Perrin within an inch of his life while Varner sent him text messages on a cell phone. Varner also testified that, even after the attack on Anthony Perrin took place, she still wanted her mother dead.
 {¶ 75} This court has reviewed the entire record of proceedings in the trial court and, upon consideration thereof, finds that although Varner and Fields had one combined objective, they clearly intended to harm two separate victims. Accordingly, the crimes of *Page 15 
conspiracy to murder Aleatha Perrin, as charged in Count 1 of the indictment, and complicity in the attempted murder of Anthony Perrin, as charged in Count 3 of the indictment, are of dissimilar import. The trial court did not err in sentencing Varner to serve two consecutive sentences as a result of her two convictions, and Varner's second assignment of error is not well-taken.
 {¶ 76} The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant, Catherine A. Varner, is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR.
[1] The record shows that Varner and Fields were present together in the trial court for both the plea and sentencing hearings. As stated in this decision and judgment entry, the trial court often inquired of both defendants concerning the events giving rise to each of the charges against them. Accordingly, as they relate to the issues presented on appeal by Varner, relevant portions of the record relating to Fields will also be set forth in this decision and judgment entry.
[2] For purposes of analyzing R.C. 2941.25, "a `conviction' consists of both `verdict and sentence.' * * *." State v. Tullis, 10th Dist. No. 04AP-333, 2005-Ohio-2205, ¶ 9, citing State v. Fenwick (2001),91 Ohio St.3d 1252, 1253. *Page 1