[Cite as *State v. Jones*, 2019-Ohio-301.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                          Court of Appeals No. S-18-013

      Appellee                                  Trial Court Nos. 15CR942
                                        15CR1040
v.

Hayward Jones                                         **DECISION AND JUDGMENT**

      Appellant                                 Decided:  February 1, 2019

* * * * *

Dave Yost, Ohio Attorney General, and Christopher L.
Kinsler, Assistant Attorney General, for appellee.

Geoffrey L. Oglesby, for appellant.

* * * * *

**SINGER, J.**

**{¶ 1}** Appellant, Hayward Jones, appeals the March 8, 2018 judgment of the

Sandusky County Court of Common Pleas convicting him, following a jury trial, of 57

counts of drug law violations including engaging in a pattern of corrupt activity,

conspiracy, and trafficking in various amounts of cocaine.  For the reasons that follow, we reverse and vacate in part, and affirm in part.

## Assignments of Error

{¶ 2} Appellant sets forth the following assignments of error:

I.  THE COURT ERRED IN FORCING MR. JONES TO USE INEFFECTIVE STANDBY COUNSEL.

II.  THE COURT ERRED IN NAMING SOMEONE AN EXPERT WHEN THEIR OWN TESTIMONY IS INCONSISTENT.

III.  THE COURT ERRED IN ALLOWING A VERDICT THAT IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.

IV.  MR. JONES'S MOTION FOR ACQUITTAL WAS IMPROPERLY DENIED.

V.  THE COURT ERRED IN GROUPING THE OFFENSES TOGETHER ON THE VERDICT FORMS.

VI.  THE COURT ERRED IN SENTENCING MR. JONES TO MAXIMUM AND MANDATORY TIME AGAINST THE FACTORS OF SENTENCING.

## Background

{¶ 3} Appellant was indicted in two separate cases for 104 counts related to conspiracy and drug trafficking.  He was charged with 9 counts in case No. 15CR942,

2.

and 95 counts in case No. 15CR1040.[1]  The cases were consolidated for purposes of trial on April 7, 2016.

{¶ 4} Prior to trial, several of the counts were severed.  Appellant pled not guilty to the remaining counts.  The matter was set for trial to be held on August 25, 2016, but a tentative agreement was reached and a change of plea hearing was set for August 19, 2016.

{¶ 5} The change of plea did not happen and, instead, appellant terminated his court-appointed counsel and elected to proceed without counsel.  The court permitted counsel to withdraw.

{¶ 6} Appellant moved for a continuance of the August 25, 2016 trial date, and the court continued the matter.  Trial was set for December 1, 2016.

{¶ 7} A pretrial was held on September 26, 2016, and appellant indicated that he was hoping to retain counsel to proceed to trial.  The court clarified that the onus was on him.

{¶ 8} On November 21, 2016, appellant moved the court to continue the matter and to appoint him two attorneys.  He specifically requested "two or more lawyers," arguing they were needed in order for him "to receive the best, most impartial legal representation."  On November 23, 2016, the trial court denied the motion, stating that it

---

[1] Original Count Nos. 2-7, 9-13, 22-25, 30-33, 39, 42-48, 55-57, 59, 64-68, 71-76, 85 and 86, were dismissed upon motion of the state in a March 8, 2018 amended sentencing entry by the trial court.

3.

was not going to allow appellant to "further manipulate the Court and continue the matter any further." The court appointed a seasoned attorney as standby counsel for appellant.

{¶ 9} The matter proceeded to jury trial on December 1, 2016. Appellant represented himself with assistance from his standby counsel.

{¶ 10} At trial, the prosecution presented direct testimony from 13 different law enforcement agents ("officers"). Appellant completed the trial pro se, and he consulted with his standby counsel throughout the various proceedings.

{¶ 11} The officers testified about the extensive surveillance and investigation that was involved in their case against appellant. Appellant called one of the officers on direct examination. Admitted as evidence were call logs and actual call recordings. These reflected calls and text messages in which others sought drugs from or agreed to provide drugs to appellant. Expert testimony was offered by various officers to explain the code language used in the calls/texts.

{¶ 12} On December 31, 2016, appellant was found guilty and sentenced to a total prison term of 13 years on all counts in both cases. The consolidated judgment was journalized on March 8, 2018. Appellant timely appeals.

### Assignment of Error No. I

{¶ 13} In the first assigned error, appellant argues he was deprived of effective assistance of counsel because the trial court forced him to proceed to trial without counsel or "a fair chance." Appellee contends appellant cannot establish ineffective assistance because he chose to proceed pro se at trial.

4.

{¶ 14} In evaluating ineffective assistance of counsel claims, the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus; *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A court must determine whether there has been a substantial violation of any of defense counsel's essential duties to his client and whether the defense was prejudiced by counsel's ineffectiveness. *See State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

{¶ 15} Appellant makes three main arguments in this first assigned error, and we will address each in turn.

### A. Waiver of Right to Counsel

{¶ 16} Appellant first argues the trial court erred in determining that he knowingly, intelligently, and voluntarily waived his right to counsel.

{¶ 17} The Sixth and Fourteenth Amendments to the United States Constitution afford most criminal defendants the right to the assistance of counsel before being convicted and punished by imprisonment. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1953).

{¶ 18} Crim.R. 44 states in pertinent part as follows:

> (A) **Counsel in serious offenses.** Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to

5.

represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.

* * *

(C) **Waiver of counsel.** Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing.

*See*, *e.g.*, *State v. Bumphus*, 6th Dist. Erie No. E-03-043, 2005-Ohio-536, ¶ 13. *See also* Crim.R. 22 ("Proceedings may be recorded in shorthand, or stenotype, or by any other adequate mechanical, electronic or video recording device.").

{¶ 19} "To establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *See id*., citing *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. "To be valid a defendant's waiver of counsel must be made with an apprehension of the nature of the charges, the statutory offense included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." (Inner quotations and citations omitted.) *Id*.

6.

**{¶ 20}** "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id*., citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L.Ed. 1461, 58 S.Ct. 1019 (1938). "A sketchy or minimal inquiry touching upon only some of the above-enumerated factors will not adequately establish an effective waiver of counsel." *Id*., citing *State v. McQueen*, 124 Ohio App.3d 444, 447, 706 N.E.2d 423 (10th Dist.1997).

**{¶ 21}** Here, and in terms of a written waiver, there is a journal entry in the record in which appellant waived his right to counsel. More specifically, the August 19, 2016 journal entry states: "Defendant this day has elected to represent himself at jury trial scheduled for 8/25/16 and to discharge his appointed counsel, Russell Leffler. Defendant by his signature below knowingly makes this constitutional decision to represent himself." Appellant signed this entry.

**{¶ 22}** In terms of an open-court waiver, there is no transcript in the record of the August 19, 2016 hearing. Our review of appellant's praecipe to the trial court clerk shows no request for transcript of the hearing. Therefore, we must presume the regularity of the proceedings and conclude the court acted appropriately in accepting appellant's waiver of counsel. *See* App.R. 9(E); *see also State v. Newman*, 6th Dist. Wood No. WD-15-031, 2016-Ohio-2667, ¶ 7.

7.

{¶ 23} Based on appellant's actions, we find he knowingly, intelligently, and voluntarily waived his right to counsel under Crim.R. 44(C), and thus there is no effective assistance of counsel claim based on that argument.

### B. Standby Counsel

{¶ 24} The court eventually appointed Leffler as standby counsel to assist appellant in his quest to represent himself.

{¶ 25} Appellant now challenges this appointment as a second argument within his first assigned error, asserting it presented additional issues concerning ineffective assistance because he should have been afforded full representation as opposed to standby counsel.

{¶ 26} In *Bumphus*, we recognized that "[a]fter the right to counsel has been properly waived, trial courts may appoint standby counsel to assist the pro se defendant." *Bumphus*, 6th Dist. Erie No. E-03-043, 2005-Ohio-536, at ¶ 14, citing *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 28. We also clarified that "the defendant has no right to hybrid representation, which presents problematic ethical issues concerning effective assistance of counsel when counsel has taken a more active role in the defense." *Id*., citing *Martin* at ¶ 33. "Thus, when permitted to go beyond mere consultation, hybrid representation may constitute reversible error." *Id*.

{¶ 27} Here, appellant moved the court to continue the trial date so he could be appointed new attorneys two weeks prior to trial. He had already been granted a continuance on August 26, 2016, after he wrote a letter to the court stating that he needed

8.

"additional time to prepare to represent [him]self." However, this time he requested the continuance for the court to appoint two attorneys, arguing his case required two due to the amount of charges. The court denied the continuance, specifically noting appellant discharged a competent, experienced attorney and then knowingly, intelligently, and voluntarily chose to proceed pro se. The trial court found appellant was solely seeking to delay the proceedings.

{¶ 28} We agree, and we initially find no issue with the appointment of standby counsel, as appellant indeed waived his right to counsel. *See Martin* at ¶ 32 (establishing how the right to counsel and right to proceed pro se are both afforded but cannot be asserted simultaneously). There is no basis to claim the denial of the continuance was an abuse of discretion. Further, we find no evidence or indication in the record that Leffler's assistance was hybrid representation or went beyond mere consultation. Consequently, we find no merit to this second argument.

## C. Voir Dire

{¶ 29} As his third and final argument, appellant asserts the trial court improperly deprived him of standby counsel during voir dire and committed error in disallowing him from participating in voir dire.

{¶ 30} Crim.R. 24(B) states, in pertinent part, as follows:

> Any person called as a prospective juror for the trial of any cause shall be examined under oath or upon affirmation as to the prospective juror's qualifications. The court may permit the attorney for the defendant,

or the defendant if appearing pro se, and the attorney for the state to conduct the examination of the prospective jurors or may itself conduct the examination.

*See*, *e.g.*, *State v. Jones*, 20 Ohio App.3d 331, 486 N.E.2d 179, 180 (1st Dist.1984).

{¶ 31} A clear abuse of discretion occurs where a total preclusion or foreclosure of good faith voir dire examination as to any proper subjects of inquiry within the context of Crim.R. 24(C) is imposed, and such abuse of discretion is reversible error. *Id.* "This must be so in order to ensure the right to trial by an impartial jury as embodied in the Ohio and United States Constitutions." *Id.*

{¶ 32} In this case, the record reflects appellant proceeded to voir dire examination pro se, and that he did not have standby counsel present as examinations initially began. During pretrial discussion in chambers before the jurors were brought in, appellant explained his predicament of not being clear on how to proceed in voir dire. Specifically, the conversation was as follows:

> [APPELLANT]: Yes, sir. I wanted to say that I have 105 charges and when I— when I signed a waiver as far as to represent myself, it was in— it was Mr. Leffler's idea to do it just so I can buy time to retain counsel, and I— well, I used that time to try to retain counsel, but the prices were 50, $60,000—
>
> THE COURT: Okay.

10.

[APPELLANT]: — so that didn't work out the way he planned it to be, so that's why I asked for a lawyer because the stuff that I've seen— me, myself, I'm not a lawyer and I know what's right is right and what's wrong is wrong. There's a lot of stuff that I've read and it concerns my case and I think I need help with presenting it. I don't know how to—

THE COURT: Well, we've gone down that road, okay, and I—I've got— Mr. Leffler is going to be here after the jury is selected. He'll be sitting in the back. If you feel you need him— I mean, this is guy [sic] is— was a prosecutor for 20 years. All right?

[APPELLANT]: I understand.

{¶ 33} Voir dire then began and, during it, the trial court explained the process and appellant's rights under Crim.R. 24. Specifically, the court addressed appellant as such:

THE COURT: It would be your opportunity to address them, ask them questions and to make yourself comfortable that— that they would be good jurors in your case or bad jurors, and you will have— you'll have four preemptory challenges, as does the State, and if you discover that one of the jurors, perhaps, is— should be disqualified for cause, you can attempt to expose that of the Court's benefit and that juror then would be excused and another one would be called up, so this is your opportunity to go through that process. Do you want to do that?

11.

**[APPELLANT]:** Um, no, I don't— no. I don't know what— I don't know— no.

{¶ 34} After this exchange, the court then questioned whether appellee wanted to take part in questioning jurors. Appellee requested certain jurors be questioned, and eventually some jurors were dismissed for cause. Appellant was often asked if he had any objections to the dismissals, but he usually responded in the negative to each.

{¶ 35} Appellant's passive approach did not happen in all instances, however. For instance, one prospective juror made a remark that "Sandusky County Court is a joke." Appellee wanted to either remove the juror or, if appellant had objection to such a removal, wanted to question the prospective juror to "get to the bottom of it." Appellant was then asked by the court if he had such objection, to which he stated that he would "probably rather talk to [the prospective juror] one-on-one and see[.]" The court agreed and ordered a recess to allow counsel and appellant to talk with the prospective juror. Appellee questioned him, and the record reflects appellant participated with one question. The discussion was over and the court proceeded. The prospective juror was excused.

{¶ 36} The court then asked the parties if there were any jurors to challenge for cause. Both appellee and appellant responded in the negative. Voir dire concluded and the court addressed the jury, and the case proceeded to opening statements.

{¶ 37} Based on our review of the transcripts and applicable law, we cannot say that appellant was denied his right to participate in voir dire. To the contrary, we find

12.

appellant was given ample instruction and opportunity to, and that he actually did to a certain degree, participate in voir dire.

{¶ 38} What's more, although standby counsel was not present for appellant during voir dire, appellant never objected to proceeding through it without him. This means on appeal appellant is required to show plain error. *See State v. Patton*, 6th Dist. Lucas No. L-12-1356, 2015-Ohio-1866, ¶ 39.

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶ 11[.]

*See Patton* at ¶ 39.

{¶ 39} In this case, we cannot say that we find a deviation from a legal rule because appellant actually participated in voir dire. Additionally, we cannot say that appellant has made a meritorious argument that the outcome of his trial would have been different.

{¶ 40} Accordingly, the first assignment of error is not well-taken.

13.

## Assignment of Error No. II

**{¶ 41}** In the second assigned error, appellant argues the trial court committed error when naming Michael Noel as an expert when Noel did not know basics about slang, drug terminology. Appellee argues the trial court properly qualified Noel as an expert.

**{¶ 42}** Evid.R. 702 provides that "[a] witness may testify as an expert if all of the following apply:"

**(A)** The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

**(B)** The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

**(C)** The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

**(1)** The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

14.

**(2)** The design of the procedure, test, or experiment reliably implements the theory;

**(3)** The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

*See*, *e.g.*, *State v. Richardson*, 6th Dist. Lucas No. L-07-1214, 2010-Ohio-471, ¶ 73-94.

**{¶ 43}** In this case appellant challenges the testimony of appellee's witness, special agent of the Drug Enforcement Agency, Officer Michael Noel.

**{¶ 44}** Appellant argues Noel's testimony is contradicted by his own testimony. More specifically, appellant contends since Noel testified that a "ball" or "eight ball" was both 2.5 grams and 3.5 grams of cocaine, he must not be an expert for purposes of Evid.R. 702, because such slang, drug terminology cannot represent both measurements. Hence appellant claims Noel cannot be an expert without knowing those slang terms of the trade, especially considering he was testifying as an expert on that particular topic.

**{¶ 45}** The trial court addressed, in open court, whether Noel was qualified as an expert with respect to slang terminology of the drug trade.

**{¶ 46}** In particular, Noel testified to the meaning of a "split," and appellant objected and asked the court if Noel was testifying as an expert. The court turned to appellee and stated, "[a]ll right. See what you can do to qualify Mr. Noel."

**{¶ 47}** Appellee then began questioning Noel, to which he responded and provided answers that were based on his knowledge, skill, experience, and training. Against appellant's objection, the trial court qualified Noel as an expert, stating as follows:

15.

"Well, I think it's sufficient, so the jury is still entitled to assign whatever weight [they] wish to assign to Mr. Noel's explanation of various drug lingo terms."

{¶ 48} Under the first prong of Evid.R. 702, we note specialized knowledge is certainly required to determine what certain slang terms mean in the drug trade, as that knowledge or experience goes beyond that possessed by laypersons. This first element is satisfied in the record. *See* Evid.R. 702(A).

{¶ 49} Under the second prong, and with regard to Noel's qualifications, knowledge, and experience, he testified that he had partaken in over 100 controlled purchases during his career. He explained the process of setting up the controlled buys, and described how he sits with informants and makes controlled calls to drug dealers. In those calls, Noel explained, the informant and dealer use "code words to deter law enforcement of the actual meaning of the conversation[.]" Noel testified that he then confirms the meaning of those words because he analyzes the purchase and proves the amount and drug involved. This second element is satisfied in the record. *See* Evid.R. 702(B).

{¶ 50} Under the third and last prong, we find Noel's testimony and described translations of drug, slang terms to be reliable based on the process where the amount and drug involved are confirmed by the controlled calls and subsequent purchases. Noel identified and described terms such as "rack," "hizzie," "half," "split," "game," and "eight ball," and all the translations resulted from the reliable process Noel employed to

16.

determine the meaning of those terms. This third element is satisfied in the record. *See* Evid.R. 702(C).

{¶ 51} In sum, we find the elements of Evid.R. 702 were satisfied, and the trial court did not commit error in determining Noel to be an expert. Accordingly, the second assignment of error is not well-taken.

### Assignments of Error No. III and IV

{¶ 52} In the third assigned error, appellant argues his convictions are against the manifest weight. Appellee contends the verdicts were not against the manifest weight because the convictions are amply supported in the record by competent, credible evidence.

{¶ 53} In the fourth assigned error, appellant argues the court committed error when denying his Crim.R. 29 motion. Appellee contends the Crim.R. 29 motion was properly denied because there was sufficient evidence.

{¶ 54} We will address these assigned errors together for each of appellant's convictions.

### A. Legal Standards

{¶ 55} The legal standard in reviewing the manifest weight is to determine whether the greater amount of credible evidence supports the conviction. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The appellate court, as if the "thirteenth juror" must review the record, weigh the evidence and all reasonable

17.

inferences drawn from it, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *See State v. Steed*, 6th Dist. Wood No. WD-15-069, 2016-Ohio-8088, ¶ 51, citing *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio 6048, 943 N.E.2d 1092 (6th Dist.).

{¶ 56} Crim.R. 29 motions for acquittal are reviewed under the same standard as a sufficiency of the evidence claim. *State v. Hollstein*, 6th Dist. Lucas No. L-08-1184, 2009-Ohio-4771, ¶ 28. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal quotations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Appellate courts will not weigh evidence or assess credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

### B. Case No. 15CR942

{¶ 57} In case No. 15CR942, appellant was convicted of nine separate offenses.

{¶ 58} The initial offense listed in appellant's indictment and bill of particulars was the charge of engaging in a pattern of corrupt activity. Because this analysis

18.

requires, among others, that two or more corrupt activities be shown in the record, we will address this conviction after reviewing the other convictions in case No. 15CR0942.

Count Nos. 2 and 3

{¶ 59} Therefore, the first offenses we address are Count Nos. 2 and 3, which are conspiracy in violation of R.C. 2923.01(A)(2), a felony of the second degree, and trafficking in cocaine in violation of R.C. 2925.03(A)(2), a felony of the first degree.

{¶ 60} R.C. 2923.01(A)(2) provides:

> **(A)** No person, with purpose to commit or to promote or facilitate the commission of * * * engaging in a pattern of corrupt activity, corrupting another with drugs, a felony drug trafficking * * * shall * * * **(2)** Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses.

See, e.g., State v. Varner, 6th Dist. Lucas No. L-06-1215, 2007-Ohio-5306, ¶ 55-58.

{¶ 61} R.C. 2925.03(A)(2) provides:

> **(A)** No person shall knowingly * * * **(2)** [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person.

19.

{¶ 62} The indictment and bill of particulars in this case state that on or about June 21, 2014, appellant conspired to purchase 56 grams of cocaine from another dealer. No other fact is presented in the indictment or bill of particulars regarding these charges.

{¶ 63} At trial, the evidence adduced to support the counts and convictions was Officer Michael Noel's testimony regarding a taped conversation appellant had with another drug dealer. Noel confirmed that the call occurred on June 21, 2014, at 9:39 a.m., and that the conversation consisted of appellant agreeing to share in the purchase of cocaine.

{¶ 64} Review of the call and tape played for the jury reveals appellant called and asked to be brought "a split," to which the other dealer agreed.

{¶ 65} Noel testified that "a split" is "approximately two ounces," or 56 grams of cocaine. We thus find sufficient and competent, credible evidence appellant agreed to purchase 56 grams of cocaine from another dealer, but note that no other evidence was adduced regarding these charges.

{¶ 66} R.C. 2923.01(B) further provides:

> **(B)** No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that

manifests a purpose on the part of the actor that the object of the conspiracy should be completed.

See, e.g., *State v. Childs*, 88 Ohio St.3d 194, 197, 724 N.E.2d 781 (2000); *State v. Lambert*, 2017-Ohio-4310, 82 N.E.3d 29 (4th Dist.).

{¶ 67} "[A]n overt act is an open act, done outwardly, without attempt at concealment, and performed pursuant to and manifesting a specific intent or design." *State v. Papp*, 68 Ohio App.2d 21, 23, 426 N.E.2d 518 (10th Dist.1980).

{¶ 68} Based on the record, the basis and evidence that a substantial overt act occurred sufficient to substantiate Count No. 2 presumably was the alleged purchasing of the "split" in Count No. 3, which was to have happened on June 21, 2014.

{¶ 69} However, we find no evidence in the record to support the charge and conviction under Count No. 3.

{¶ 70} To be exact, there is no evidence to show or support that appellant prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed 56 grams of cocaine, on or around June 21, 2014. To the contrary, there is evidence in the record that appellant called back later that day and left a message with the dealer, complaining that the dealer stood him up. There is no other evidence the dealer called appellant back about the drugs until June 24, 2014, which were the facts and evidence offered to support Count Nos. 4 and 5. Therefore, we find neither the substantial overt step was properly alleged nor the actual trafficking was proved to support Count Nos. 2 and 3.

21.

**{¶ 71}** Accordingly, we find there is neither sufficient nor competent, credible evidence to support the verdicts and convictions under Count Nos. 2 and 3.

Count Nos. 4 and 5

**{¶ 72}** In Count Nos. 4 and 5, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(2), *supra*, a felony of the first degree, and conspiracy in violation of R.C. 2923.01(A)(2), *supra*, a felony of the second degree.

**{¶ 73}** In the indictment and bill of particulars appellant is alleged to have conspired to purchase, and to have actually purchased, an order of 56 grams of cocaine. These crimes were alleged to have occurred on June 24, 2014.

**{¶ 74}** The evidence adduced at trial to support these counts and convictions was, again, Noel's testimony regarding a conversation appellant had with the same drug trafficker of the facts under Count Nos. 2 and 3. Noel confirmed that a call between them occurred on June 24, 2014, at 2:52 p.m., and that the conversation consisted of appellant agreeing to share in the purchasing of cocaine. The dealer confirmed the cost as $5,400 or $5,500.

**{¶ 75}** Based on our review of the record, there is evidence appellant met with the dealer on June 29, 2014, to purchase the "split" they had been discussing since June 21, 2014.

22.

{¶ 76} R.C. 2925.03(C)(4)(f) states:

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows: * * * (f) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine * * *, trafficking in cocaine is a felony of the first degree[.]

{¶ 77} Accordingly, and based on our review of the entire record including the filings, transcripts, and exhibits, we find sufficient and competent, credible evidence supports the verdicts and convictions of Count Nos. 4 and 5.

Count Nos. 6 and 7

{¶ 78} In Count Nos. 6 and 7, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(2), *supra*, a felony of the third degree, and conspiracy in violation of R.C. 2923.01(A)(2), *supra*, a felony of the fourth degree.

{¶ 79} Appellant is alleged to have conspired to sell, and to have then sold, an amount of cocaine between 10 and 20 grams on July 9, 2014.

{¶ 80} The evidence adduced at trial to support these counts and convictions was Noel's testimony regarding another conversation appellant had with the same drug trafficker of the facts under Count Nos. 2 through 5. Noel confirmed that several calls

23.

between them and a third dealer occurred on July 9 through July 11, 2014, and that appellant agreed to purchase 14 grams of cocaine.

{¶ 81} Appellant called and asked for "a hizzie," to which the dealer agreed. Noel testified that "a hizzie" is a half-ounce of cocaine. We find sufficient and competent, credible evidence appellant agreed to purchase 14 grams of cocaine with another dealer.

{¶ 82} Further, we find that the dealer then immediately called another dealer to fill the order, there looking to purchase for distribution the drugs appellant requested, and that subsequently appellant and the dealer agreed for him to hold onto the purchased drugs. We find this is evidence of a substantial overt step in furtherance of the agreement.

{¶ 83} We also find the record supports that on July 11, 2014, appellant called the dealer back and requested "*another* half." These are ultimately facts related to Count Nos. 8 and 9, however, we note that the request for an additional 14 grams, coupled with the overwhelming evidence of sales made by appellant, provides circumstantial evidence appellant purchased and distributed the first 14 grams he purchased.

{¶ 84} Accordingly, and based on our review of the entire record, we find sufficient and competent, credible evidence supports the verdicts under Count Nos. 6 and 7.

24.

Count Nos. 8 and 9

**{¶ 85}** In Count Nos. 8 and 9, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), a felony of the third degree, and conspiracy in violation of R.C. 2923.01(A)(2), *supra*, a felony of the fourth degree.

**{¶ 86}** R.C. 2925.03(A)(1) provides:  "(A) No person shall knowingly * * * (1) Sell or offer to sell a controlled substance or a controlled substance analog[.]"

**{¶ 87}** In the indictment, and as written verbatim in the bill of particulars, it is alleged that on July 11, 2014, "Defendant and Hayward Jones arranged a drug transaction in which Travis Tucker delivered the drugs to Jones."

**{¶ 88}** Although we find the record supports appellant indeed requested "another hizzie," to which the dealer responded by phoning and arranging the sale, we find this evidence only satisfies the elements for conspiracy under R.C. 2923.01(A)(2), not trafficking under R.C. 2925.03(A)(1).  We do not find sufficient or competent evidence in the record to support that appellant sold or offered to sell cocaine to Travis Tucker. Thus, there is competent evidence to support Count No. 9, but not Count No. 8.

Count No. 1

**{¶ 89}** The last offense we address is the pattern of corrupt activity in violation of R.C. 2923.32(A), a felony of the first degree.

**{¶ 90}** R.C. 2923.32(A)(1) states:  "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of an enterprise through a pattern of corrupt activity."  *See State v. Reyes*, 6th Dist. Wood No.

25.

WD-03-059, 2005-Ohio-2100, ¶ 27. In the statute, "'enterprise' includes any individual * * * organization, association, or group of persons associated in fact although not a legal entity." *Id.*; R.C. 2923.31(C). The term includes "illicit as well as licit enterprises." *Id.* "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, which are related to affairs of the enterprise, are not isolated, and are not so closely related that they constitute a single event. *Id.*; R.C. 2923.31(E).

{¶ 91} The indictment and bill of particulars set out that appellant, between June 18, 2014, and July 30, 2014, committed two or more corrupt activities in association with an enterprise. The alleged "enterprises," *id.*, were or consisted of the dealers to and from whom appellant sold and purchased drugs for profit.

{¶ 92} Based on confirmation appellant committed at least two applicable crimes related to affairs of the enterprise(s), we find sufficient, competent and credible evidence supports the verdict and conviction of Count No. 1.

{¶ 93} In sum we find the verdicts and convictions in Count Nos. 1, 4, 5, 6, 7, and 9, of case No. 15CR942, were amply supported in the record with sufficient, competent and credible evidence, and that Count Nos. 2, 3, and 8 were not supported as such.

26.

## C. Case No. 15CR1040

{¶ 94} In case No. 15CR1040, appellant was convicted of 48 separate offenses.

### Count Nos. 10 through 23

{¶ 95} The first offenses we address are Count Nos. 10 through 23, as presented in the March 8, 2018 sentencing entry. Appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), felonies of the fifth degree.

{¶ 96} R.C. 2925.03(A)(1) provides: "(A) No person shall knowingly * * * (1) Sell or offer to sell a controlled substance or a controlled substance analog."

{¶ 97} In the indictment and bill of particulars it is alleged that appellant sold less than five grams of cocaine to the same individual on 14 occasions between August 26, 2014, and October 8, 2014.

{¶ 98} For Count No. 10, appellant is alleged to have sold cocaine to the individual on August 26, 2014, at 5:08 p.m. Noel testified about how, and a phone conversation was played in which, appellant negotiated the sale of a "nice teener." Noel specified "teener" means approximately 1.75 grams of cocaine. Review of the calls and call log indicates appellant received a text from the individual the next day, on August 27, 2014, in which the individual stated, "[I] never bitch about stuff, but that was a small teener."

{¶ 99} R.C. 2925.03(C)(4)(a) states:

> **(4)** If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates

27.

division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows: * * * **(a)** Except as otherwise provided in division (C)(4)(b), (c), (d), (e), (f), or (g) of this section, trafficking in cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender[.]

{¶ 100} Based on our review of the record, we find sufficient and competent, credible evidence supports that appellant sold 1.75 grams of cocaine as alleged in Count No. 10.

{¶ 101} For Count Nos. 11 and 12, appellant is alleged to have sold cocaine to the individual on September 11, 2014. Specifically, the individual called and wanted "more" (also referenced a "fifty" or $50 worth) and, after numerous calls/texts back and forth, at 6:09 p.m., a phone conversation confirmed appellant saw and met the individual. Surveillance by Officer Brendan Gillen also confirmed appellant met with the individual that day.

{¶ 102} Consequently, we find sufficient and competent, credible evidence to support the verdict and conviction in Count No. 11. Nevertheless we fail to find sufficient evidence in the record to support Count No. 12, as no evidence was presented to show appellant sold or offered cocaine to the individual on more than one occasion on September 11, 2014.

28.

{¶ 103} For Count Nos. 13 and 14, appellant is alleged to have sold cocaine to the individual on September 12, 2014, at 11:43 a.m. The individual called and wanted to "pick up something" from appellant, to which appellant agreed. The amount requested, stated as "a four," was never clarified in the record to be an exact amount. However, Officer Noel did testify that informants and drug users/traffickers often spoke in code to hide their intent, and that in this case numerical references inevitably were references to amounts of cocaine.

{¶ 104} The record reveals that eventually the two agreed to meet at Anthony's Bar. Surveillance and testimony from Officers Kip Newton and Scott Wyckhouse confirmed appellant and the individual's cars were in Anthony's parking lot at that time.

{¶ 105} Further, we find that the same individual called appellant back at 5:15 p.m., on September 12, 2014, and stated that he wanted "*another* good four." Appellant agreed and asked the individual to meet at Anthony's Bar again. Subsequently, the record reveals the individual called appellant back the next morning and complained about the "shit from last night." We find circumstantial evidence that appellant met with the individual both in the afternoon, and at night, on September 12, 2014. Consequently, sufficient and competent, credible evidence supports the verdicts and convictions of Count Nos. 13 and 14.

{¶ 106} For Count No. 15, appellant is alleged to have sold cocaine to the individual on September 13, 2014. The record reflects they arranged to meet at

29.

Anthony's for a "thirty," and that surveillance confirmed they met at 5:01 p.m. We find sufficient and competent, credible evidence to support the verdict and conviction.

{¶ 107} For Count No. 16, appellant is alleged to have sold cocaine on September 16, 2014. The individual called appellant and they agreed to meet at Anthony's Bar, for a "twenty-five." Ten minutes later the individual called appellant and let him know he was outside. Officer Steve Cousino testified he surveilled Anthony's Bar parking lot that day and could confirm the two met. We find sufficient and competent, credible evidence to support the verdict and conviction of Count No. 16.

{¶ 108} For Count No. 17, appellant is alleged to have sold cocaine on September 17, 2014. At 5:38 p.m., the individual called and asked appellant for "*another* two." They arranged to meet at Anthony's Bar, and after the meeting the individual was pulled over and apprehended by Office George Dorsey, who testified he followed and arrested the individual about three streets from Anthony's Bar. Dorsey was informed by other officers that the drug deal had just occurred prior to the pursuit and traffic stop and, as reflected in the record with chemical testing, the arranged traffic stop confirmed the individual had .1 and .26 of a gram of cocaine in the car. Appellant received a call from the individual after the arrest to inform him that he was "busted by the cops." We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 17.

{¶ 109} For Count No. 18, appellant is alleged to have sold cocaine on September 22, 2014. At 2:55 p.m., the individual called and asked appellant if he had got

30.

"anything," to which appellant responded in the affirmative and said he would call back in an hour. At 4:13 p.m., they discussed meeting at Anthony's "in a minute," and the order was for "two." Officer Lewton testified he surveilled the parking lot and could confirm the two met. We find sufficient and competent, credible evidence supports the verdict and conviction.

{¶ 110} For Count Nos. 19 and 20, appellant is alleged to have sold cocaine twice on September 28, 2014. At 1:09 p.m., the individual called and asked appellant if he would be around "in about an hour," to which appellant responded in the affirmative. The individual ordered "a three," and stated that "this time" he had the cash. At 2:02 p.m., appellant was called and he confirmed he would see the individual in a minute. Four minutes later the individual called appellant and was directed to "come to the alley right by Dominoes, across the street." We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 19.

{¶ 111} The individual again began to call appellant around 7:27 p.m., on September 28, 2014, but did not get an answer until 10:02 p.m. During that conversation the individual ordered "a four." Appellant responded "alright, I'm on my way from Clyde." They agreed to meet when appellant returned. At 10:34 p.m., they spoke and appellant confirmed his location and that he was in view of the individual. We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 20.

31.

**{¶ 112}** For Count Nos. 21 and 22, appellant is alleged to have sold cocaine twice on September 30, 2014. At 12:53 p.m., the individual called appellant and they arranged to meet "down by Anthony's." Five minutes later appellant confirmed he would be by the tracks, and the individual stated that he wanted "two." Officer Wyckhouse testified he saw the individual drive toward the tracks around 1:00 p.m. that day, and a 1:05 p.m. call confirmed the individual saw appellant and that they met. We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 21.

**{¶ 113}** The call log further shows the individual called again around 3:18 p.m., and that he asked appellant for "*another* one of them." Appellant discussed being available in "about 30 minutes," and a 5:04 p.m. conversation reveals they agreed to meet at "the same spot" "at the tracks." We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 22.

**{¶ 114}** For Count No. 23, appellant is alleged to have sold cocaine on October 8, 2014. The individual called to arrange a meeting with appellant and, at 10:40 a.m., they agreed to meet at Anthony's Bar. Appellant stated the individual was to call before arriving and, at 10:47 a.m., the individual did so and appellant confirmed he was walking to meet "down by Anthony's." Officer Lewton confirmed he saw them meet. We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 23.

32.

**{¶ 115}** In sum, and with the exception of Count No. 12, we hold the verdicts and convictions of Count Nos. 10 through 23 were supported by sufficient and competent, credible evidence.

Count Nos. 24 and 25

**{¶ 116}** In Count Nos. 24 and 25, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, felonies of the first degree.

**{¶ 117}** R.C. 2925.03(C)(4)(f) specifies:

**(4)** If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows: * * * **(f)** If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

**{¶ 118}** Appellant allegedly sold an individual between 27 and 100 grams of cocaine on two separate occasions. More specifically, he allegedly sold 28 grams and 84 grams on September 9 and/or 10, 2014.

33.

{¶ 119} The evidence adduced to support the charges and convictions were officer testimony and phone logs/recordings. Specifically, the record reveals appellant, on September 9, 2014, at 9:05 a.m., told the individual that he had "like three of them," and that "they" were "like 14 though." Officer Noel testified that based on his experience and expertise that appellant and the individual were speaking in code, and that the discussion was about the price for and quality of an ounce of cocaine (28 grams priced at $1,400). We find sufficient and competent, credible evidence appellant offered to sell 28 grams of cocaine.

{¶ 120} In that same conversation the individual stated that he would be calling appellant back "around five o'clock." Appellant agreed that, that time worked for him and, at 5:15 p.m., the individual called and stated he was coming over. At 7:07 p.m., another discussion indicated appellant was "already there," and that the individual would be there. Officer Gillen testified to seeing the individual arrive at and leave appellant's home. We find sufficient and competent, credible evidence appellant sold the 28 grams of cocaine, which supports the verdict and conviction under Count No. 24.

{¶ 121} Additionally, the record reflects that at 7:32 p.m., that same day, the individual called appellant back and asked him if "the shit [was] coming back good and everything?" Appellant responded in the affirmative, and immediately the individual said "yeah, that shit looks a little better." They then discussed whether appellant would be able to do "*another* one" tomorrow. Appellant indicated that another one was possible and, at 1:06 p.m., on September 10, 2014, they arranged a meeting. At 8:35 p.m.,

34.

appellant confirmed they would meet at the "same place." Although there is no evidence appellant offered to sell or sold 84 grams of cocaine, we do find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 25, because the record demonstrates appellant offered to sell *another* ounce of cocaine to the individual.

Count Nos. 26 and 27

{¶ 122} In Count Nos. 26 and 27, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, felonies of the third degree.

{¶ 123} R.C. 2925.03(C)(4)(d), in pertinent part, states:

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows: * * * (d) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds ten grams but is less than twenty grams of cocaine, trafficking in cocaine is a felony of the third degree, and, except as otherwise provided in this division, there is a presumption for a prison term for the offense.

{¶ 124} In the indictment and bill of particulars it is alleged that appellant sold 14 grams of cocaine on both September 12 and 14, 2014.

35.

**{¶ 125}** The phone records presented at trial demonstrate that on September 12, 2014, at 5:08 p.m., the individual called appellant and stated that he had "got a lick for a half right now." They discussed whether the product was "chunk," and the individual said he would pay "$750 right now and $650 tomorrow," in the event appellant would give him a "zip." Appellant stated he would need an hour to meet and, at 8:15 p.m., they arranged to meet at "Casa Fiesta." The order was clarified to be for "a half," and at 8:51 p.m., the individual called to state he was outside, to which appellant stated he would come outside. Noel testified a half meant 14 grams of cocaine, a "zip" meant a full ounce, and "chunk" meant the product was in solid, bricked form. We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 26.

**{¶ 126}** The individual again called on September 14, 2014, at 5:24 p.m. They discussed whether appellant was "good for *another* one around?" Appellant stated that he was indeed good for another, and he clarified on whether the individual meant a "half" or "whole one." The individual clarified he simply wanted another half (14 grams), and that they could meet at the same location as last time, Casa Fiesta. We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 27.

Count Nos. 28 and 29

**{¶ 127}** In Count Nos. 28 and 29, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, felonies of the fifth degree.

36.

{¶ 128} Appellant allegedly sold or offered to sell less than five grams of cocaine twice on September 17, 2014. At 11:44 a.m. that day, an individual called appellant and stated that she needed a "seventy." They discussed meeting at a Speedway gas station and, at 11:56 a.m., appellant called to confirm the individual's location. Moreover, and later that same day, at 3:46 p.m., the individual called back and ordered "*another* dollar." At 3:55 p.m., a phone conversation revealed that the individual was in a car that was seen by appellant because he asked "that was you?" after the individual stated appellant had just passed her in his car. The individual replied and immediately confirmed the meeting location.

{¶ 129} Additionally, there was officer testimony in the record to support that, after this second meeting between appellant and the individual, the individual was pulled over and arrested by police and drugs and a crack pipe were found in the vehicle. This arrest confirmed the identity of the individual, and considering there were two meetings arranged and that circumstantial evidence reasonably shows appellant discussed, offered and sold drugs to the individual on those occasions, we find sufficient and competent, credible evidence supports the verdicts and convictions of Count Nos. 28 and 29.

Count No. 30

{¶ 130} In Count No. 30, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, a felony of the fifth degree.

{¶ 131} Appellant allegedly offered to sell an unspecified amount of cocaine to his brother on August 17, 2014.

37.

**{¶ 132}** Phone records reflect that at 7:13 p.m., the brother called and asked appellant "how much work" he had. Appellant explained he "probably got like a quarter left," to which his brother responded by expressing that he needed "a ball." Noel testified that "a ball" is code language for an eighth of an ounce of cocaine, which he specified is roughly 2.5 to 3.5 grams. Thus, we find sufficient and competent, credible evidence to support the verdict and conviction of Count No. 30.

Count No. 31

**{¶ 133}** In Count No. 31, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, a felony of the fifth degree.

**{¶ 134}** In the indictment and bill of particulars it is alleged that appellant offered to sell an unspecified amount of cocaine to his brother on August 27, 2014.

**{¶ 135}** This charge stems from a conversation in which appellant directed another individual to purchase cocaine from his brother. The record does not reflect that appellant sold or offered to sell any cocaine but, rather, that he forwarded a customer to his brother. We cannot say appellant personally offered or sold cocaine in this instance. Accordingly, we do not find sufficient and competent, credible evidence to support Count No. 31.

Count No. 32

**{¶ 136}** In Count No. 32, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, a felony of the third degree.

38.

**{¶ 137}** In the indictment and bill of particulars it is alleged that appellant sold his brother more than or equal to 10 grams, but less than 20 grams, of cocaine on September 3, 2014.

**{¶ 138}** At 11:35 p.m., appellant's brother called him and asked "how much work you got?" Appellant replied that he had none, and the brother stated he would check back the next day. The next day he checked back, and appellant confirmed that he could sell "a half." Noel's testimony confirmed that this was code for 14 grams of cocaine. We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 32.

Count Nos. 33 and 35

**{¶ 139}** In Count Nos. 33 and 35, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, felonies of the fourth degree.[2]

**{¶ 140}** R.C. 2925.03(C)(4)(d), in pertinent part, states:

**(4**) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows: * * * (c) Except as otherwise provided in this division, if the amount of the drug involved

---

[2] The trial court dismissed Count Nos. 34 and 59 with prejudice in its March 8, 2018 entry.

39.

equals or exceeds five grams but is less than ten grams of cocaine, trafficking in cocaine is a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term for the offense.

{¶ 141} In the indictment and bill of particulars it is alleged that appellant sold or offered to sell his brother seven grams of cocaine twice on September 8 and 16, 2014.

{¶ 142} At 6:04 p.m., on September 8, 2014, appellant's brother called and asked appellant if he had "work." Appellant replied in the affirmative, and the brother stated he needed a "quart." They arranged to meet at appellant's home but, at 9:48 p.m., the brother called and complained that appellant forgot. Appellant responded, stating he was going to "put it on the scale real quick." At 10:10 p.m., the brother called stating he was at the door. We find sufficient and competent, credible evidence supports Count No. 33.

{¶ 143} Further, on September 16, 2014, at 1:07 p.m., the brother called appellant and asked if he was "gonna go to work?" Appellant responded that he only had "a quarter right now." The brother declined. Nevertheless, we find sufficient and competent, credible evidence supports Count No. 35, because appellant offered to sell seven grams of cocaine.

Count No. 36

{¶ 144} In Count No. 36, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, a felony of the fifth degree.

40.

{¶ 145} Appellant allegedly offered to sell or sold less than 5 grams of cocaine on October 2, 2014. At 11:02 a.m., an individual called and asked appellant if he had "something nice for $30?" Appellant responded in the affirmative and agreed to deliver the order to the individual's home. We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 36.

Count No. 37

{¶ 146} In Count No. 37, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, a felony of the fifth degree.

{¶ 147} According to the trial court judgment, appellant was alleged to have sold or offered to sell less than 5 grams of cocaine on September 6, 2014. The facts presented to support this verdict and conviction were that appellant called a dealer and requested to purchase a "quaker," which expert testimony supported is a quarter-ounce (or seven grams) of cocaine. No evidence in the record reveals appellant sold or offered to sell any cocaine in this instance, and we find nothing to support Count No. 37.

Count No. 38

{¶ 148} In Count No. 38, appellant was indicted on and convicted of conspiracy in violation of R.C. 2923.01(A)(2), a felony of the fourth degree.

{¶ 149} R.C. 2923.01(A)(2) provides:

(A) No person, with purpose to commit or to promote or facilitate the commission of * * * a felony drug trafficking * * * shall * * * (2) Agree

41.

with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses.

{¶ 150} In the indictment and bill of particulars it is alleged that appellant called another dealer and ordered a half-ounce of cocaine on September 16, 2014. Specifically, at 12:53 p.m., appellant called the dealer and asked "what's up with you?" The dealer responded, stating "Shit, ah, shit ah, I * * * I got probably ah like a half of one like that ah available I can get to right now." Appellant said "let me get it," and they agreed the dealer would call appellant back in 15 minutes. At 1:43 p.m., they agreed to meet where they met "last time." We find this is evidence of a substantial overt step in furtherance of their agreement and, thus, the verdict and conviction of Count No. 38 is supported in the record.

### Count Nos. 39 through 54

{¶ 151} In Count Nos. 39 through 54, as presented in the March 8, 2018 sentencing entry, appellant was indicted on and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), *supra*, felonies of the fifth degree.

{¶ 152} In the indictment and bill of particulars it is alleged that appellant sold less than five grams of cocaine to different individuals on 16 occasions between August 15 and October 2, 2014.

{¶ 153} For Count No. 39, appellant is alleged to have sold or offered to sell less than five grams of cocaine to an individual on September 15, 2014. At 1:17 p.m., the individual texted appellant, asking "you got same?" Appellant texted back "yeah."

42.

Around 3:30 p.m., they exchanged texts and agreed to meet at Anthony's Bar. Noel testified that he saw the individual approaching appellant's vehicle in Anthony's parking lot. We find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 39.

{¶ 154} For Count No. 40, appellant is alleged to have offered to sell less than five grams of cocaine to the same individual of Count No. 39, that same day. The evidence presented was phone records which revealed the individual stated, in a text issued to appellant, "$50 for just one, right?" Appellant responded, "yeah." We thus find sufficient and competent, credible evidence supports the verdict and conviction of Count No. 40.

{¶ 155} For Count Nos. 41 and 42, appellant is alleged to have sold or offered to sell less than five grams of cocaine twice on August 15, 2014. At 3:40 p.m., an individual called appellant and asked if appellant could do "a 40?" Appellant responded in the affirmative, and they agreed to meet at Anthony's Bar. At 3:48 p.m., another conversation was held in which they again discussed the amount ordered ("$40"), and appellant confirmed he was waiting. Furthermore, later that same day, at 6:27 p.m., the individual called back and asked appellant if he could "do that again?" Appellant responded in the affirmative and arranged another meeting at the "same spot." We find sufficient and competent, credible evidence supports the verdicts and convictions of Count Nos. 41 and 42.

43.

{¶ 156} For Count Nos. 43 and 44, appellant is alleged to have sold or offered to sell less than five grams of cocaine twice on September 5, 2014.  At 7:20 p.m., an individual called appellant and asked if he could "do a 50?"  Appellant responded in the affirmative, and they agreed to meet "by the tracks."  Moreover, later that day the individual called back and asked if appellant could "do that again?"  Appellant responded in the affirmative, and they agreed to meet at Anthony's this time.  Officer Mark Apple surveilled Anthony's parking lot that day and confirmed the two met.  We find sufficient and competent, credible evidence supports the verdicts and convictions of Count Nos. 43 and 44.

{¶ 157} For Count Nos. 45, 46, and 47, appellant is alleged to have sold or offered to sell to the same individual less than five grams of cocaine three separate times on September 12, 2014.  At 8:41 a.m., the individual called and asked appellant if he wanted to "hook up" in 10 to 15 minutes.  Appellant approved and they agreed to meet at "the office."  At 8:50 a.m., the individual called back and confirmed he was bringing what he owed appellant.  Four minutes later appellant confirmed he was right around the corner.  No order for drugs was placed by the individual and no other evidence was offered to support this alleged transaction.  Because this conversation only regarded appellant getting paid back, we cannot say the verdict and conviction of Count No. 45 was supported in the record.

{¶ 158} Later that day at 12:27 p.m., the same individual called and ordered a "35."  Appellant agreed to meet by Anthony's, but later changed the meeting location.  At

44.

12:55 p.m., they discuss being near one another and, three minutes later, confirmed a meeting location "around back" of a gas station. Officer Lewton testified to seeing the two meet. We find substantial competent, credible evidence supports Count No. 46.

{¶ 159} The individual called appellant back that day at 4:44 p.m. He asked appellant if appellant could "spot * * * a fifty?" Appellant agreed, and they arranged to meet at Anthony's. Further, the record reflects that six days later the individual called back for more and mentioned that he has the $50 he owed appellant. We thus find sufficient and competent, credible evidence supports Count No. 47.

{¶ 160} For Count Nos. 48, 49, and 50, appellant is alleged to have sold or offered to sell the individual from Count Nos. 45 through 47, less than five grams of cocaine three times on September 18, 2014. At 11:09 a.m., the individual called appellant and mentioned that he wanted "a little piece." He confirmed that he had $25 for appellant in addition to the $50 he owed him. Appellant agreed he could fill the order. Then, at 3:04 p.m., the individual called back and asked appellant if he could do a "50?" Appellant responded in the affirmative, and they arranged to meet at Speedway. At 3:12 p.m., appellant changed the meeting place, and the individual confirmed he would be there in a second. The individual called appellant at 5:57 p.m., asking if appellant could "do anything" for "15 bucks." Appellant stated he could, and they arranged to meet "by Daywood." At 6:06 p.m., the individual called and was directed to a location where appellant confirmed he could be seen "next to the pool." We find sufficient and competent, credible evidence supports Count Nos. 48, 49 and 50.

45.

{¶ 161} For Count Nos. 51 through 54, appellant is alleged to have sold or offered to sell the individual from Count Nos. 45 through 50, less than five grams of cocaine four times on October 2, 2014.

{¶ 162} At 10:52 a.m., the individual called appellant and asked if appellant would be available to "settle up" once he got into town and got to the bank. Appellant confirmed his availability, and the individual then stated that he wanted a "40." They agreed to meet at Anthony's Bar, and at 11:12 a.m., both confirmed they were almost there. Then, at 1:15 p.m., the individual again called appellant and asked if appellant could "do a 40?" Appellant replied in the affirmative and they agreed to meet "by Copper." Officer Lewton testified that he saw them meet at Copper Penny that day.

{¶ 163} Then again, at 3:14 p.m., the individual called and asked if appellant could "do [him] a fat 20?" Appellant answered in the affirmative, and they arranged to meet "over by Allen." As the individual was waiting, appellant called and asked him if he was around Allen. The individual stated he was on Allen, but that he left the area in which he was because police were around. Appellant then directed the individual to stay on Allen because he was "about a minute away." Lastly, at 4:45 p.m. that same day, the individual called and asked appellant if appellant "could spot [him] a 50?" Appellant stated he could, and then said to give him 30 minutes. Although we find no evidence this transaction occurred, there is evidence to support that appellant offered to sell the cocaine. We thus find sufficient and competent, credible evidence to support Count Nos. 51 through 54.

46.

## Count No. 55

{¶ 164} In Count No. 55, appellant was indicted on and convicted of conspiracy in violation of R.C. 2923.01(A)(2), *supra*, a felony of the second degree.

{¶ 165} In the indictment and bill of particulars it is alleged that appellant conspired to purchase 28 grams of cocaine from another dealer on September 12, 2014.

{¶ 166} At 7:45 p.m., on September 12, 2014, appellant called the dealer and asked "what a zipper hit for?"  Appellant responded, stating "One-Four."  As noted above, Officer Noel testified that using the word "zip" means an ounce (28 grams) of cocaine, and that street value of an ounce is roughly $1,400, which is what the dealer meant by "One-Four." We find sufficient and credible, competent evidence to show an agreement happened.

{¶ 167} Nevertheless, we fail to find additional evidence to show that a substantial overt step in furtherance of this conspiracy occurred.  *See* R.C. 2923.01(B), *supra*.  Thus, we cannot say that there is sufficient or competent, credible evidence to support Count No. 55.

## Count Nos. 56 through 58

{¶ 168} In Count Nos. 56 through 58, as presented in the March 8, 2018 sentencing entry, appellant was indicted on and convicted of three counts of conspiracy in violation of R.C. 2923.01(A)(2), felonies of the fourth degree.

47.

{¶ 169} In the indictment and bill of particulars it is alleged that appellant conspired to purchase and trafficking 14 grams of cocaine on three separate occasions from another dealer on September 17, 19, and 27, 2014.

{¶ 170} On September 17, 2014, at 5:12 p.m., appellant called the dealer from Count No. 55, and appellant requested a "half on the fizzle." The dealer agreed and stated he would call appellant back in "about a half-hour." At 8:03 p.m., appellant called the dealer and asked if he had forgotten about appellant. They then agreed to meet "down on Elliot."

{¶ 171} No other phone conversation occurred between them until 1:42 p.m., on September 18, 2014, at which time appellant called and said he was having problems with the product. Specifically, appellant expressed that "it" kept "staying at 11" and not "jumping to the 14." Noel explained what the conversation was code for, as follows:

[PROSECUTOR]: Do you recognize these voices?

[NOEL]: Yes, [appellant] and [the individual].

[PROSECUTOR]: Okay. Someone's having some issues; is that correct?

[NOEL]: Yes.

[PROSECUTOR]: Who is-- * * * Who's complaining?

[NOEL]: [Appellant] is having problems cooking his cocaine into crack, and [the dealer] says that he will come back or come by his house to

48.

see if he can fix it, so based on whatever [appellant] is doing with his mixture, it's not coming out. It's not turning into crack.

{¶ 172} Because the record shows appellant took the step of cooking the drugs to prepare them for sale, we find sufficient and competent, credible evidence supports Count No. 56.

{¶ 173} On September 19, 2014, at 12:57 p.m., appellant called the dealer again and asked for "another one of them." They arranged to meet "at the house on Linden." At 1:07 p.m., the dealer sent a text message asking appellant if he was on his way, and appellant responded "yea," at 1:08 p.m. Because the record reveals appellant took the step of meeting with the dealer, we find sufficient and competent, credible evidence supports Count No. 57.

{¶ 174} Lastly, on September 27, 2014, at 10:30 a.m., appellant called the dealer and asked for "a whole one." The dealer stated that he did not have that much, and that he only had a half. Appellant asked if he wanted $700 for it, or if he could sell it for $650. They agreed to meet at the dealer's home. At 10:38 p.m., the dealer called appellant and appellant confirmed he was "about to pull up right now." Because the record reveals appellant took the step of meeting with the dealer, we find sufficient and competent, credible evidence supports Count No. 58.

{¶ 175} In sum, appellant's third and fourth assignments of error are well-taken in part, and not well-taken in part. More specifically, all verdicts and convictions in Count Nos. 10 through 58, of case No. 15CR1040, were amply supported in the record with

49.

sufficient, competent and credible evidence, with the exception of Count Nos. 12, 31, 37, 45 and 55, which were not supported in the record as such.

**Assignment of Error No. V**

{¶ 176} In the fifth assigned error, appellant argues the trial court committed error by grouping the offenses in the verdict forms. Appellee asserts that the court did not improperly present the verdict forms, and that appellant's reliance on *Smith* is misplaced.

{¶ 177} Appellant argues *Smith* stands for the proposition that grouping separate counts on a verdict form results in reversible error. *See State v. Smith*, 8th Dist. Cuyahoga No. 98280, 2013-Ohio-576, ¶ 57-61.

{¶ 178} In *Smith*, Smith challenged the trial court's use of a single verdict form from which he was convicted of two separate counts of aggravated burglary. *Id*. at ¶ 58. The *Smith* court found the verdict form "essentially merged two separate counts into a single verdict form, forcing the jury to make a single determination for two separate counts." (Quotations omitted.) *Id*.

{¶ 179} Appellant specifically argues that *Smith* is analogous to his case because here the jury did not consider different facts and counts separately.

{¶ 180} Appellee distinguishes the case here from *Smith* by asserting that the jury in *Smith* presented the court with a question which showed and reflected that they found the defendant not guilty of one of the counts on the verdict form. Appellee notes there is no such indication in the record here. We agree and find no such evidence in the record. Thus, appellant's fifth assignment of error is not well-taken.

**Assignment of Error No. VI**

{¶ 181} In the sixth and last assigned error, appellant argues the trial court erred in sentencing appellant to the maximum and mandatory time. Appellee contends the court did not err as such, and that appellant relies on bad law.

{¶ 182} We review felony sentences under a two-prong approach. R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate and remand a disputed sentence if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; or

> (b) That the sentence is otherwise contrary to law.

*See State v. Behrendt*, 6th Dist. Lucas No. L-15-1135, 2016-Ohio-969, ¶ 6; *see also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23.

{¶ 183} A sentence is not contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11, along with the seriousness and recidivism factors under R.C. 2929.12, and imposes a sentence within the statutory range. *See State v. Craig*, 6th Dist. Wood No. WD-14-061, 2015-Ohio-1479, ¶ 9.

{¶ 184} Here, appellant received an aggregate 13-year prison sentence, which consisted of five mandatory 11-year sentences set to run concurrently with one another,

51.

three two-year sentences set to run concurrently with one another but consecutively with the 11-year sentences, and roughly 50 one-year sentences for the remaining convictions set to run concurrently to all other sentences.

{¶ 185} The 11-year sentences were for felonies of the first degree, the two-year sentences were for felonies of the second degree, and the remaining one-year sentences were for various felonies ranging from third to fifth degrees.

{¶ 186} Pursuant to R.C. 2929.14(A)(1), the statutory sentencing range for a first-degree felony is 3 to 11 years. Additionally, R.C. 2929.14(B)(3) provides:

> * * * [I]f the offender commits a violation of section 2925.03 * * * of the Revised Code and that section classifies the offender as a major drug offender, * * * if the court imposing sentence upon an offender for a felony finds that the offender is guilty of corrupt activity with the most serious offense in the pattern of corrupt activity being a felony of the first degree, * * * the court shall impose upon the offender for the felony violation a mandatory prison term of the maximum prison term prescribed for a felony of the first degree that, subject to divisions (C) to (I) of section 2967.19 of the Revised Code, cannot be reduced * * *.

{¶ 187} In this case, appellant was sentenced to concurrent prison terms of 11 years for his first-degree felony convictions brought under Count Nos. 1, 3, 4, 24, and 25. These counts consisted of convictions for engaging in a pattern of corrupt activity and trafficking in cocaine under R.C. 2925.03. We find the sentence for Count No. 3 was

52.

imposed contrary to law because the conviction was not supported in the record with sufficient and competent, credible evidence. The sentences for Count Nos. 1, 4, 24, and 25, however, fall within the permissible range and are mandated by law.

{¶ 188} Furthermore, because appellant was sentenced to concurrent 11-year prison terms under Count Nos. 1, 3, 4, 24, and 25, vacating Count No. 3 has no effect on his aggregate prison term of 13 years. Nevertheless, we vacate the sentence imposed for Count No. 3, and affirm the sentences imposed for Count Nos. 1, 4, 24, and 25.

{¶ 189} Pursuant to R.C. 2929.14(A)(2), the permissible range for a felony of the second degree is a prison term of two to eight years.

{¶ 190} Here, appellant was sentenced to concurrent prison terms of two years for his second-degree felonies, which were all convictions for conspiracy. These convictions were for Count Nos. 2, 5, and 55, and although these imposed sentences were within the permissible range, we find the sentences were imposed contrary to law.

{¶ 191} We have found there was not sufficient and competent, credible evidence to support Count Nos. 2 and 55. Thus, sentences for those counts were issued contrary to law.

{¶ 192} Additionally, we find the rule of merger as codified in R.C. 2923.01(G) applies to Count No. 5. We note that because merger was not raised below, we must proceed with a plain-error analysis.

{¶ 193} For plain error to exist, there must be an obvious deviation from a legal standard which affects substantial rights or the outcome of trial. *See*, *e.g.*, *State v.*

53.

*Russell*, 2d Dist. Montgomery No. 17278, 1999 Ohio App. LEXIS 5872, *5-9 (Dec. 10, 1999).

{¶ 194} R.C. 2923.01(G) provides: "When a person is convicted of committing or attempting to commit a specific offense or of complicity in the commission of or attempt to commit the specific offense, the person shall not be convicted of conspiracy involving the same offense."

{¶ 195} Stated otherwise, "R.C. 2923.01(G) merges the conspiracy offense, due to its inchoate nature, into the substantive offenses which are the object of the conspiracy." *State v. Marian*, 62 Ohio St.2d 250, 255, 405 N.E.2d 267 (1980). *See also State v. Yarbrough*, 3d Dist. Shelby No. 17-97-03, 1999 Ohio App. LEXIS 1786, *41 (Mar. 31, 1999); *State v. Perdue*, 5th Dist. Richland No. CA-2565, 1988 Ohio App. LEXIS 3167, *5 (Aug. 1, 1988). *But see State v. Varner*, 6th Dist. Lucas No. L-06-1215, 2007-Ohio-5306, ¶ 54-66 (finding convictions for two separate offenses is not prohibited by R.C. 2923.01 (G)).

{¶ 196} In this case Count Nos. 4 and 5 regarded the same 56 grams of cocaine. Count No. 4 was for trafficking the drugs, and Count No. 5 was for the conspiracy leading up to the purchasing and trafficking of the drugs. We find this count merges into the substantive offense which was the object of the conspiracy. Thus an obvious deviation from a legal standard exists. *Russell*. Moreover, we find that appellant was sentenced to an additional two years, to run consecutively, as a result of the convictions for Count Nos. 2, 5, and 55. Consequently, we find the outcome of the proceedings

54.

would have been different, and that there exists plain error with regard to the sentences under those counts. *Id.*

{¶ 197} Accordingly, we vacate the sentences imposed for Count Nos. 2, 5, and 55, and we note this has an effect of reducing appellant's total prison term.

{¶ 198} Pursuant to R.C. 2929.14(A)(3)-(5), the permissible range for the third-degree felonies in this case is 9 to 36 months; for fourth-degree felonies it is 6 to 18 months; and for fifth-degree felonies it is 6 to 12 months.

{¶ 199} Here, appellant was sentenced to one-year prison terms for those convictions of third, fourth, and fifth-degree felonies. These were convictions brought under Count Nos. 6-23, 26-54, and 56-58. We find the sentences for Count Nos. 7, 8, 12, 31, 37, and 45, were imposed contrary to law. As stated above, there was not sufficient and competent, credible evidence to support Count Nos. 8, 12, 31, 37, and 45. Further, we find under R.C. 2923.01(G), the conviction for Count No. 7 would merge with that imposed for Count Nos. 6. We therefore vacate those sentences imposed for Count Nos. 7, 8, 12, 31, 37, and 45, but note that vacating these counts has no effect on appellant's total stated prison term and that we affirm the remaining, year-long prison sentences imposed.

{¶ 200} We lastly examine the record to determine if the sentences lawfully imposed were otherwise contrary to law.

{¶ 201} R.C. 2929.11(A) provides, in relevant part: "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others

55.

and to punish the offender using the minimum sanctions that the court determines accomplish those purposes * * *." In order to comply with R.C. 2929.11, a trial court must impose a sentence that is "reasonably calculated to achieve the two overriding purposes of felony sentencing * * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." *See* R.C. 2929.11(B).

{¶ 202} In carrying out its obligations to impose a sentence consistent with the purposes and principles of sentencing, the trial court must weigh the factors indicating that the offender's conduct is more serious than conduct normally constituting the offense under R.C. 2929.12(B) against those factors indicating that the offender's conduct is less serious than conduct normally constituting the offense under R.C. 2929.12(C). Further, the court must weigh the factors contained in R.C. 2929.12(D) indicating the likelihood that the offender will commit future crimes against the factors contained in R.C. 2929.12(E) indicating that the offender is not likely to commit future crimes.

{¶ 203} We further note that a sentencing court is not required to use any specific language or make specific findings to demonstrate that it considered the applicable sentencing criteria. *See State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000); *State v. Thebeau*, 6th Dist. Ottawa No. OT-14-017, 2014-Ohio-5598, ¶ 16.

{¶ 204} Here, the trial court stated in open court and in its sentencing entry that it considered the relevant sentencing criteria.

56.

{¶ 205} For example, in open court at the December 5, 2016 hearing, the trial court implied it considered the relevant sentencing criteria when stating, before sentencing appellant, as follows: "My job is to attempt to protect the public from future crime and impose an appropriate punishment. You've been to prison three times, twice earlier on drug related activity. You're back again and the jury has spoken." The transcript of the hearing also reveals several statements from the court outlining the severity of appellant's conduct and his negative effect on the community.

{¶ 206} The sentencing entry, moreover, details that the trial court considered the relevant factors. It states:

The Court, having considered the purposes of felony sentencing pursuant to ORC 2929.11, as well as the seriousness of the crime and recidivism factors pursuant to ORC 2929.12, specifically, the fact that the Defendant incurred three previous felony incarcerations and in this trial suffered five felony one convictions among fifty-nine findings of guilt, the Court finds the Defendant is not amenable to community control and it is therefore ordered, adjudged and decreed that the Defendant be, and hereby is, sentenced to control, care and custody of the Ohio Department of Rehabilitations and Corrections * * *.

{¶ 207} Further, we find the following journal entry language shows more of the applicable considerations, as follows: "The court finds that consecutive sentences in this matter are necessary in order to punish the offender and are not disproportionate to the

57.

seriousness of the Defendant's conduct and the danger that the Defendant poses to the public."

{¶ 208} In light of the statements at the hearing, as well as the language contained in the sentencing entry, we conclude that the trial court complied with its obligations relating to the necessary sentencing considerations and criteria.

{¶ 209} Accordingly, appellant's sixth assignment of error is well-taken in part, and not well-taken in part.

## Disposition Summary

| Count No. | Offense | Code Section | Degree | Sentence Imposed | Disposition on Appeal |
|---|---|---|---|---|---|
| 1 | Engaging in Pattern of Corrupt Activity | R.C. 2923.32(A) | F1 | 11 Years Mandatory | Affirm |
| 2 | Conspiracy | R.C. 2923.01 | F2 | 2 years | Vacate Conviction -Insufficient Credible Evidence |
| 3 | Trafficking in Cocaine | R.C. 2925.03 | F1 | 11 Years Mandatory | Vacate Conviction -Insufficient Credible Evidence |
| 4 | Trafficking in Cocaine | R.C. 2925.03 | F1 | 11 Years Mandatory | Affirm |
| 5 | Conspiracy | R.C. 2923.01 | F2 | 2 years | Vacate Sentence – Merges with Count No. 4 pursuant to R.C. 2923.01(G) |
| 6 | Trafficking in Cocaine | R.C. 2925.03 | F3 | 1 year | Affirm |
| 7 | Conspiracy | R.C. 2923.01 | F4 | 1 year | Vacate Sentence – Merges with Count No. 6 pursuant to R.C. 2923.01(G) |
| 8 | Trafficking in Cocaine | R.C. 2925.03 | F3 | 1 year | Vacate Conviction -Insufficient Credible Evidence |
| 9 | Conspiracy | R.C. 2923.01 | F4 | 1 year | Affirm |
| 10 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |

58.

| | | | | | |
|---|---|---|---|---|---|
| 11 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 12 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Vacate Conviction-Insufficient Credible Evidence |
| 13 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 14 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 15 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 16 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 17 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 18 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 19 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 20 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 21 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 22 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 23 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 24 | Trafficking in Cocaine | R.C. 2925.03 | F1 | 11 Years Mandatory | Affirm |
| 25 | Trafficking in Cocaine | R.C. 2925.03 | F1 | 11 Years Mandatory | Affirm |
| 26 | Trafficking in Cocaine | R.C. 2925.03 | F3 | 1 Year | Affirm |
| 27 | Trafficking in Cocaine | R.C. 2925.03 | F3 | 1 year | Affirm |
| 28 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 29 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 30 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |

59.

| 31 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Vacate Conviction -Insufficient Credible Evidence |
|---|---|---|---|---|---|
| 32 | Trafficking in Cocaine | R.C. 2925.03 | F3 | 1 year | Affirm |
| 33 | Trafficking in Cocaine | R.C. 2925.03 | F4 | 1 year | Affirm |
| 35 | Trafficking in Cocaine | R.C. 2925.03 | F4 | 1 year | Affirm |
| 36 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 37 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Vacate Conviction -Insufficient Credible Evidence |
| 38 | Conspiracy | R.C. 2923.01 | F4 | 1 year | Affirm |
| 39 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 40 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 41 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 42 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 43 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 44 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 45 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Vacate Conviction -Insufficient Credible Evidence |
| 46 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 47 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 48 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 49 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 50 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 51 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |

60.

| 52 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
|---|---|---|---|---|---|
| 53 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 54 | Trafficking in Cocaine | R.C. 2925.03 | F5 | 1 year | Affirm |
| 55 | Conspiracy | R.C. 2923.01 | F2 | 2 Years | Vacate Conviction -Insufficient Credible Evidence |
| 56 | Conspiracy | R.C. 2923.01 | F4 | 1 Year | Affirm |
| 57 | Conspiracy | R.C. 2923.01 | F4 | 1 Year | Affirm |
| 58 | Conspiracy | R.C. 2923.01 | F4 | 1 Year | Affirm |

## Conclusion

{¶ 210} For the foregoing reasons, the March 8, 2018 judgment of the Sandusky County Court of Common Pleas is reversed and vacated in part, and affirmed in part. We modify the judgment to reflect that appellant is ordered to serve a total stated prison term of 11 years, and his convictions and/or sentences for Count Nos. 2, 3, 8, 12, 31, 37, 45, and 55, are vacated. The sentence imposed for Count No. 5 is vacated and merges with No. 4, and the sentence imposed for Count No. 7 is vacated and merges with No. 6. The judgment is otherwise affirmed, consistent with this decision. The parties are ordered to split the costs of this appeal pursuant to App.R. 24.

Judgment reversed and vacated in part, and affirmed in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                                     _____
                                                                      JUDGE

Arlene Singer, J.
CONCUR.                                          _____
                                                                       JUDGE

James D. Jensen, J.,
DISSENTS.


**JENSEN, J., dissenting,**

{¶ 211} Contrary to the majority's conclusion, I would hold that the trial court erred in depriving appellant of standby counsel during voir dire. Therefore, I find that this matter should be remanded to the trial court for a new trial, and I must respectfully dissent.

{¶ 212} In appellant's first assignment of error, he argues, inter alia, that the trial court erred in depriving him of his right to standby counsel during voir dire.

62.

{¶ 213} The United States Supreme Court has determined that a trial court may appoint standby counsel to assist a defendant if and when the defendant seeks help, "and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, fn. 46 (1975). Likewise, the Ohio Supreme Court has held that a trial court may appoint standby counsel to assist a defendant who is acting pro se after a defendant properly waives the right to counsel. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 28. "Standby counsel serves as an important resource for pro se defendants by assisting them to navigate 'the basic rules of courtroom protocol' and to 'overcome routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals.'" *State v. Newman*, 5th Dist. Stark No. 2017CA00219, 2018-Ohio-3253, ¶ 27, quoting *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

{¶ 214} The majority concludes that appellant's argument is subject to plain-error review because appellant "never objected to proceeding through [voir dire] with [standby counsel]." Under its plain-error analysis, the majority rejects appellant's argument because appellant has failed to demonstrate that the result of the proceedings would have been different were he permitted to have standby counsel available during voir dire.

{¶ 215} At the outset, I disagree that appellant failed to object to proceeding through voir dire without the benefit of standby counsel. Prior to voir dire, appellant requested the assistance of counsel because he recognized that he was in over his head

63.

and needed assistance with presenting his defense.  The trial court then rejected appellant's request, finding that it had "gone down that road."  The court went on to state that it had appointed standby counsel, who would be present "after the jury is selected."  After informing the court that he terminated his prior counsel because he did not feel as though counsel was zealously advocating for him, appellant stated:  "Judge, I'm not trying to prolong this case or delay it anything.  I just need proper counseling, that's all I ask for."

{¶ 216} Later, at the beginning of voir dire, appellant was informed by the trial court as to the process of voir dire.  When asked if he wished to address the jury, appellant responded:  "I don't even know what to say, so – I don't know."  The court provided additional information on peremptory and for-cause challenges, and again asked appellant if he wished to go through the voir dire process, to which appellant responded: "Um, no, I don't – no.  I don't know what – I don't know – no."  Without conducting any further inquiry, the court moved on to inquire of the state as to whether it had any for-cause challenges.

{¶ 217} Because appellant requested counsel prior to the start of voir dire, implicitly objecting to proceeding pro se, I find that a plain-error analysis is not appropriate in this case.  However, even under a plain-error analysis, I conclude that the trial court erred in failing to make standby counsel available to appellant during voir dire.

{¶ 218} In *State v. Harris*, 6th Dist. Erie No. E-02-019, 2003-Ohio-5190, we considered the import of prejudice as it relates to a defendant's right to counsel during

64.

voir dire. There, we held that the absence of counsel during voir dire was inherently prejudicial to the defendant and amounted to the denial of a fair trial. *Id.* at ¶ 33. In reaching this conclusion, we referenced the decision of the United States Supreme Court in *United States v. Cronic*, 466 U.S. 648, 80 L.Ed.2d 657, 104 S.Ct. 2039 (1984), wherein the court held that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 659. Voir dire is a critical stage of trial. *State v. McWhorter*, 8th Dist. Cuyahoga No. 87443, 2006-Ohio-5438, ¶ 35. In light of this authority, I find that appellant was not required to demonstrate how he was prejudiced by the trial court's refusal to make standby counsel available during voir dire.

{¶ 219} As noted above, the purpose of standby counsel is to assist a defendant if and when the defendant seeks help. Here, appellant clearly sought such help during voir dire. Rather than granting appellant's request, the trial court informed appellant that voir dire would continue and that he would receive counsel once the jury was selected. In so doing, I find that the trial court prevented appellant from utilizing his standby counsel for the purposes set forth above, thereby depriving appellant of his right to counsel. *State v. Hardman*, 8th Dist. Cuyahoga No. 102600, 2016-Ohio-498, ¶ 28; *see also State v. Robinson*, 8th Dist. Cuyahoga 106721, 2018-Ohio-5036, ¶ 19 (concluding that a trial court errs in prohibiting a defendant from using standby counsel in the manner allowed under the law, even where the defendant has waived his right to counsel).

65.

{¶ 220} Upon consideration of the record in this case, I find that the trial court deprived appellant of his right to counsel when it refused to provide appellant with standby counsel at voir dire.  Because the majority concludes otherwise, I must dissent.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.